Charles Edward **CAMPBELL**, Appellant,

v.

**UNITED STATES**, Appellee.

**No. 5359.**

District of Columbia Court of Appeals.

Argued Nov. 10, 1970.

Decided Feb. 3, 1971.

Sol Rosen, Washington, D.C., appointed by this court, for appellant.

John E. Rogers, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Edwin K. Hall, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, FICKLING and REILLY, Associate Judges.

FICKLING, Associate Judge:

We reverse appellant's convictions for petit larceny, destruction of property, and attempted burglary II. Since there was no probable cause to arrest, the seizure of a television set during that arrest was illegal and therefore it could not have been properly admitted into evidence.[1]

About 4 o'clock in the afternoon, while routinely patrolling a neighborhood in an unmarked car, two police officers operating in the "old clothes unit" (without uniforms) observed appellant and a companion walking together. Appellant was openly holding a screwdriver; his companion carried a television set. Recognizing that televisions are often the fruit of housebreakings, the officers became suspicious. They left their car and approached the suspects. At that point appellant dropped the screwdriver. The officers recovered it, and appellant, when confronted, denied ownership.

One of the officers testified that he asked appellant how he and his companion obtained the television. Appellant replied that he had just purchased it from his companion's cousin; that the cousin had driven them to a point one block south,

from which point they were presently walking. After asking for and receiving the cousin's name, the officer testified that he then "asked them if they would go to the sub-station with [him] for further investigation to follow their story up and they agreed." The officers had no knowledge of any housebreaking, nor had they been advised to be on the "lookout" for any suspects. Upon their arrival at the station, the officers' inquiries still revealed no housebreaking or other crime with which the suspects could be connected.

During the police investigation, the suspects were placed in an unlocked upstairs room at the station, where they allegedly "voluntarily" remained for approximately one and one-half hours. Though they were not told that they were under arrest, neither were they told that they were free to take the television and leave.

After an hour the cousin was located and he denied having seen the companion in the past 2 years.[2] However, appellant and his companion were not released or told they were free to go. At 5:30 p.m., a housebreaking was reported at an address only 25 feet from where the suspects were first sighted. The television set was taken to the scene and identified by complainant as his. The suspects were then formally arrested and advised of their rights.

To resolve this appeal, we must first determine the time of arrest and seizure of the television set;[3] then, whether there was probable cause at that time.

Assuming appellant and his companion voluntarily went to the precinct, we hold that when the suspects were in the police station, at some point prior to the report of

---

1. Appellant also contends that certain hearsay evidence was improperly admitted and that there was insufficient evidence to support a conviction. We need not reach these questions.

2. The trial transcript reveals inconsistencies in regard to whose cousin was involved. A police officer testified that appellant said the television was pur-

chased from his companion's cousin. The officer then testified that when the appellant's own cousin was located, he denied having seen the appellant's companion in the past 2 years.

3. Appellant argues, too, that the screwdriver was also inadmissible. This contention has no merit since the screwdriver was clearly abandoned property.

a housebreaking, they were in fact under arrest.

An arrest involves a restraint of freedom. A formal declaration of intent to arrest is not necessary. Kelley v. United States, 111 U.S.App.D.C. 396, 298 F.2d 310 (1961). In fact, in some circumstances it is proper for courts to determine that there has been an arrest despite an *express disclaimer* of such an intent given by a police officer to a suspect. Seals v. United States, 117 U.S.App.D.C. 79, 325 F.2d 1006 (1963), cert. denied, 376 U.S. 964, 84 S.Ct. 1123, 11 L.Ed.2d 982 (1964). It is necessary then to look at all the circumstances surrounding a situation and determine their natural effect upon a reasonable man;[4] would he be "rash indeed to suppose he was not under arrest."

In the instant case, we find nothing improper in the officers' conduct on the street. Asking questions after their suspicions were understandably aroused was commendable police action. After the suspects were brought to the station and their story was allegedly checked out and found untrue, however, the situation changed. They were not then told they could leave; rather, nothing was said regarding their freedom and they remained until a housebreaking report was received. Under these circumstances, particularly after their story had been discredited, it is clear that they could not have felt free to leave the precinct.

We emphasize that we are not now saying it is impossible for someone to voluntarily accompany officers to a police station. Such is not the case. Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199 (1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969). We do say, however, that it is always more difficult, and sometimes impossible, to find vol- untariness absent a statement to the suspect informing him of his right to leave.

■ We must now determine whether the police had probable cause to arrest prior to receiving the housebreaking report at 5:30 p.m.

Probable cause demands that before an arrest a prudent police officer must have reasonable grounds to believe both that a felony has been committed and that the suspect was responsible.[5] Bell v. United States, 102 U.S.App.D.C. 383, 388, 254 F.2d 82, 87, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958); Harrison v. United States, D.C.App., 267 A.2d 368 (1970). The question for the court is whether the officer acted reasonably bearing in mind that if he is to act at all, he must often react swiftly to developing factual situations. Such an officer does not have the benefit of the calm, detached atmosphere found in law libraries. Jackson v. United States, 112 U.S.App.D.C. 260, 302 F.2d 194 (1962).

One of the more significant factual considerations is whether an officer has been expressly advised of the commission of a particular crime. It is clear that such information is not a condition precedent. Bell v. United States, *supra;* Wright v. United States, D.C.App., 242 A.2d 833 (1968). In fact it is evident that responsible performance of their duties frequently requires the police to act without such express information. Probable cause to believe a crime has been committed can be readily implied from factual circumstances. Nevertheless, it is usually easier to understand police conduct and find it reasonable where they have actual knowledge of a crime and the only probability is whether the suspect is the criminal. That principle is well illustrated by a comparison of the present case with Clemm v. United States,

4. It is important to consider whether the suspect "had reason to believe and did believe that he was under arrest." Seals v. United States, *supra* at 81 n. 5, 325 F.2d at 1008 n. 5.

5. Warrantless arrests and searches and seizures pursuant thereto may be also made for certain misdemeanors. D.C. Code 1967, § 23–306.

D.C.App., 260 A.2d 687 (1970). In *Clemm* the officer was advised that a housebreaking had occurred at a certain address. Two minutes later he saw a man carrying away a television set less than 50 yards from that address. He knew a crime had been committed and we agreed that he had probable cause to believe that the man had done it. The facts here are almost identical except for the lack of information as to any housebreaking. We consider such a lack, in this particular case, critical. Our often criticized society has not yet deteriorated to the point where we can say that a man who carries openly, on the street, a large household appliance is probably a thief.

Denying ownership of the screwdriver was at most suspicious; the allegedly discredited story may have added to that suspicion but did not raise it to the level of probable cause to believe a crime had been committed. Since we hold that probable cause to arrest was lacking, the judgments of conviction are

Reversed.

REILLY, Associate Judge (dissenting):

While the question is a close one, I do not share the view that defendant's constitutional rights were violated by the police. The transcript shows that neither the defendant nor Cooper, the supposed confederate arrested with him, took the stand. Hence the testimony given at the trial by one of the investigating officers being wholly uncontradicted, must be taken as true.

According to this official witness, he and another plainclothesman in driving west in the 800 block of E Street, Southeast, observed the two men walking—apparently in the opposite direction, one carrying a bulky television set and the other holding a screwdriver in his hand. At the time the pair caught their attention, they were only two or three doors away from a townhouse apartment at 817 E Street,[1] which had just been broken into, although the officers were not aware of that fact until sometime later. Judicial notice may be taken of the fact, however, that in a city where numerous burglaries and housebreaking cases are reported daily, television sets are among the most popular objects of pilferage. Clemm v. United States, D.C.App., 260 A.2d 687, 688 (1970). Hence alert police officers can scarcely be faulted for becoming curious when they saw such an uncartoned, unwieldy item being carried by hand.

Plainly it could not have come from a dealer's shop. If sold at second hand by a private individual, it was odd for the purchaser to carry it through the streets himself rather than borrowing a car from a friend, if he or his family did not own one.

In this instance, the officers reversed the direction of their car immediately, got out, and approached the two men at the other end of the block. Whether the two became wary because of what must have been an abrupt U-turn and suspected that the occupants of the car were policemen, the record does not show. The appellant, however as they approached, did heighten police suspicion by dropping the screwdriver and then denying it was his. If appellant had this tool with him for ordinary carpentry purposes, he would scarcely have disclaimed its possession.

It seems to me that the officers' reasons for suspicion at this point were more than confirmed prior to arrest by the implausible account appellant and his friend then gave of how the television set happened to be in their possession, *viz.*, that a cousin of Cooper had sold the set to appellant and had dropped him and Cooper in the 900 block of G Street, Southeast, whence they walked north to Pennsylvania Avenue and Ninth Street. If this were true, they would have been proceeding *westerly,* not

---

1. When accosted a minute or two later by the officers, they were approaching the intersection of 9th and Pennsylvania Avenue, Southeast.

*easterly*, on E Street when first seen by the witness. Moreover, if the seller had the set in his automobile at the time he sold it, his failure to deliver it to the place where the purchaser lived was strange.

Under all the circumstances, it would appear that the police had not only good reason to be suspicious but had probable cause to believe the set had been stolen. *See* Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958); Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476 (1968), motion to modify opinion denied, 131 U.S.App.D.C. 358, 404 F.2d 1335 (1968).