Glenn R. EDWARDS, Appellant,

v.

UNITED STATES, Appellee.

No. 7743.

District of Columbia Court of Appeals.

Argued en banc * Feb. 28, 1977.

Decided Nov. 7, 1977.

Frederick H. Weisberg, Public Defender Service, Washington, D. C., for appellant.

Hamilton P. Fox, III, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Garey G. Stark, Asst. U. S. Attys., Washington, D. C., were on the pleadings, for appellee.

Before KERN and HARRIS, Associate Judges, and REILLY, Chief Judge, Retired.

KERN, Associate Judge:

Two plainclothes police officers on duty in an unmarked cruiser about 2 o'clock on a March morning observed appellant and a companion walking "at a moderate pace" in the 1900 block of Savannah Street, Southeast. They further observed that no one else was about in this area of apartments. Appellant was carrying a tape recorder and a sheet or pillowcase containing, in a bag-

* See en banc order filed this date.

like fashion, other items,[1] and his companion was carrying a tape player (later determined to be an amplifier) and a stand. The officers pulled alongside to within ten or 12 feet of appellant and the other man, a Mr. Morton; Detective Jackson then opened the window on the passenger side of the auto where he was seated, identified himself as a police officer and said he wanted to talk with them. Immediately, appellant and Morton "took off running" and the detective "hopped out" and chased them. Jackson pursued them into a three-story apartment building located at 1921 Savannah Street. The detective, keeping them in sight the entire time, was about five or six steps behind when they entered Apartment 203 on the second floor, opening the apartment door without using a key or turning the knob. Detective Jackson, according to his testimony later at the pretrial suppression hearing, "used the same course of action." He further testified that as he entered "the apartment door had come back, but it hadn't been completely closed. . . It hadn't made connection with the facing around it to lock it."

Upon entry the detective saw in the center of the room the items appellant and Morton had been carrying. The pillowcase or sheet contained frozen food and was marked with a name in the same way that his own son's nursery school employed and the amplifier was "not the type of amplifier a person would listen to records . . . [but] a type of amplifier that one might speak in as a public address system." Since neither appellant nor his fellow-runner would respond to the officer's inquiry of whose property this was, Jackson's "conclusions were that the property seized was taken from a nursery." The property and men were taken to the station[2] and after "about 20 or 30 minutes elapsed . . . they [the men] were released." When a nearby Day Care Center reported to police at 7 a. m. that it had been burglared, a warrant was issued and appellant and Morton were arrested.

The trial court heard and then denied appellant's suppression motion, stating in its order that "the actions of the police officer were under all the circumstances reasonable and proper." Aside from the value of the property, which was the subject of testimony before the court, appellant and the government stipulated as to what the witnesses would testify at trial and appellant waived his right to trial by jury. The trial court found appellant guilty of receiving stolen property.

When the case was argued to a division of this court the government did not contend that Detective Jackson had probable cause to arrest appellant before entering the door of Apartment 203, although the record reflects that the government in its written opposition to appellant's suppression motion in the trial court urged, among others, that there was probable cause to arrest appellant at the moment he fled from Detective Jackson. Rather, the government's position was:

His [Detective Jackson] initial desire merely to question the two men was frustrated by their precipitous flight. . . Detective Jackson's entry into the apartment was an organic part of the unity of action which began when he first called to appellant and ended moments later when the chase ended in appellant's apartment. The entire course of Detective Jackson's actions was . . . a measured and reasonable response to the unfolding situation.

The division rendered an opinion (at 364 A.2d 1209 (1976)), in which the issue on appeal was stated to be:

[W]hether appellant could evade a *Terry* [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] stop for brief questioning on the sidewalk of Savannah

---

1. The officer described the bag as shaped like "a turnip," that is, "small at both ends and a bulge in the middle"; it appeared to him to have "small items" in it.

2. Of course, none of what Detective Jackson observed after entering Apartment 203 can be taken into account in determining whether or not he had probable cause to effect an arrest prior thereto.

Street by running from the officer into the apartment building on that street. [*Id.* at 1214.]

The division decided the issue it had identified in the instant case as follows:

We read the gravamen of the Court's holding in *Santana* [*United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976)] to be that when a citizen has knowingly placed himself in a public place *and* valid police action is commenced in that public place, the citizen cannot thwart that police action by then fleeing into a private place. . . Given these particular circumstances, we conclude the officers here should not have been forced to simply 'shrug [their] shoulders and allow a crime to occur or a criminal to escape'; *see Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), and that the trial court's decision to deny the suppression motion was correct. [*Id.* at 1214.]

After the full court upon petition by appellant decided to hear the case, the government changed the position it had taken before the division and urged at the en banc hearing as an alternative reason in support of the denial' of the pretrial suppression motion that the officer had had probable cause to arrest appellant and his companion upon the basis of their action. The en banc court has by order returned the case to the division which first heard and decided it.[3]

■ We are persuaded now that Detective Jackson did have probable cause to arrest appellant and Morton for a felony upon (1) seeing them late at night on the deserted sidewalk of a residential neighborhood carrying a tape recorder, amplifier, stand and, most significantly, a bag containing other articles; and, (2) observing them run as soon as he identified himself as a police officer and announced he wished to talk to them. While we placed emphasis in the division's original opinion on the officers' lack of "knowledge of any crime having been committed" at the precise moment they observed appellant and Morton carrying the bag and other articles down the street (364 A.2d at 1213, n. 4), we conclude the officers' lack of knowledge then of a specific crime having been committed did not preclude them from having probable cause to arrest given the lateness of the hour, the appearance of the articles being carried by appellant and his companion, and their flight when Detective Jackson identified himself. *Sibron v. New York*, 392 U.S. 40, 48–9, 66–7, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (probable cause to arrest when off-duty police officer hears noises at his apartment door and observed two men "tip-toeing" in the hallway and then flee when he enters that hallway); *United States v. Price*, 441 F.2d 1092 (2d Cir. 1971) (probable cause to arrest men who were carrying packages in the vicinity of a Post Office after dark and attempted to flee upon hearing police command "Hold it, police."); *United States ex rel. Frasier v. Henderson*, 464 F.2d 260, 263 (2d Cir. 1972) (probable cause to arrest when police on patrol late at night hear shouts and see two men running out of a deserted park, one of whom carried shopping bag; officer shouts "Stop! Police!", and one of the two men turned and looked in officer's direction and then ran); *Commonwealth v. Whitner*, 241 Pa.Super. 316, 361 A.2d 414 (1976) (probable cause to arrest where plainclothes police in unmarked car at night in highcrime neighborhood observed few people on street but two men carrying a shopping bag and suitcase, respectively; when men saw officers park and alight from their car, one throws down shopping bag revealing shirts in cellophane wrappers and runs).[4]

---

3. Judge Nebeker filed a statement accompanying that order in which he expressed agreement with the opinion issued by the division on October 13, 1976, at 364 A.2d 1209, but vacated now by the full court.

4. *Daugherty v. United States*, D.C.App., 272 A.2d 675 (1971), and *Campbell v. United States*, D.C.App., 273 A.2d 252 (1971), relied upon by appellant as dispositive of the instant case, are distinguishable. In neither of those cases did the persons observed and suspected by the police run away upon being confronted nor did these confrontations occur late at night

 

Since Detective Jackson had probable cause to arrest he could properly pursue appellant to effect that arrest in light of the Supreme Court's recent pronouncement in *United States v. Santana, supra* at 43, 96 S.Ct. at 2410, that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." Accordingly, under the particular circumstances here, we find the detective's action in (a) arresting appellant and Morton inside Apartment 203, and (b) seizing the items they had been carrying, which were then in plain view in the living room, to be lawful.

*Affirmed.*

---

in deserted residential areas. In addition, the defendants in those cases were openly carrying household appliances rather than a bag containing (and covering up) other items.