**UNITED STATES, Appellant,**

v.

**Melvin F. CHILDS, a/k/a Frederick Childs, and Charles R. Rivers, a/k/a Reginald L. Jones, Appellees.**

**No. 11792.**

District of Columbia Court of Appeals.

Argued Sept. 14, 1977.

Decided Nov. 29, 1977.

Sallie H. Helm, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Edward C.

McGuire, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant.

Michael Alan Olshonsky, Bethesda, Md., appointed by this court, for appellee Rivers.

Michael Stuart Lieber, Washington, D. C. appointed by this court, for appellee Childs joins in co-appellee's·brief.

Before KELLY, GALLAGHER and YEAGLEY, Associate Judges.

PER CURIAM:

The government appeals in a proper and timely manner pursuant to D.C. Code 1973, § 23–104(a)(1) the trial court's grant of appellees' motion to suppress statements and physical evidence which appellees contended were the fruit of an unlawful arrest.

On October 7, 1976, at approximately 9:40 p.m. officers Steven Beach and Bernardo Garcia drove their scout car into one end of an alley behind the 3800 block of Kansas Avenue, N. W., and there observed two men, appellees, standing at the alley's other end at a distance of approximately 75–100 feet. The alley was illuminated by standard street lighting, and the officers' suspicions were aroused by the sight of the two men carrying a television set through the alley toward them. When the subjects came abreast of the scout car, Officer Beach inquired through his open window if they would stop and answer some questions. One of the men mumbled something unintelligible and the two of them continued walking, at which point Officer Beach got out of the car and grabbed the arm of the man actually carrying the set, appellee Rivers, who then came to a stop.

Officer Beach asked Mr. Rivers where he and his companion were going with the set. Mr. Rivers pointed in a northerly direction and replied they were going home to Girard Street. Girard Street was in fact approximately ten blocks to the south, in a direction opposite to that in which the men were walking.

Officer Beach asked the other man, appellee Childs, where they were taking the set. Mr. Childs said they were going to 1347 Sherman Avenue. Officer Beach suspected and learned subsequently that Sherman Avenue did not have a 1300 block. Mr. Childs told Officer Beach that the set came from 737 Randolph Street, which also struck the officer as a false address. Officer Beach asked the subjects if they had identification, to which they responded negatively. Mr. Childs told the officer his name was Davis. Mr. Rivers said his name was Jones.

After a WALES check failed to turn up a report that the set had been stolen, Officer Beach offered to take the two men and the television set to 737 Randolph Street. The officer believed the set to be stolen and considered this the most expeditious manner in which to clarify the matter.

Before getting into the scout car, Mr. Childs told Officer Beach that a trip to the Randolph Street address was unnecessary because the set had in fact been purchased from a location near Georgia Avenue and Kenyon Street. At the same time, Mr. Rivers told Officer Garcia that the set had been purchased at Georgia Avenue and Upshur Street, a location approximately 12 blocks from the place described by Mr. Childs. Officer Beach asked the subjects if they could explain the series of discrepancies in their conversations with the officers. Mr. Childs replied that "you don't want to give your right name when you buy hot stuff." At this time the subjects were placed under arrest. Appellees were charged in a four-count indictment with second-degree burglary, grand larceny, receiving stolen property and destroying property.

A suppression hearing was held on December 22, 1976. The trial court ordered appellees' statements and the television set suppressed as fruit of an unlawful arrest. In the trial court's view, appellees had actually been arrested when Officer Beach had grabbed the arm of one of them to initiate the conversation, because at this time, prior to their formal custodial arrest, appellees were physically restrained and not free to leave. The trial court believed, and indeed the government does not dispute, that at this time the offices lacked probable cause to arrest appellees.

Because the trial court's ruling violates strong precedent which recognizes a police-citizen encounter such as that in the instant case as an investigatory stop subject not to the requirement of probable cause but to the rule of reasonableness, and because the stop here was reasonable and appellees' ultimate arrest was based on probable cause, we reverse.

## I. THE INITIAL ENCOUNTER WAS A REASONABLE INVESTIGATORY STOP

The clear precedential authority of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), both of which recognized the distinction between stops and arrests and both of which gave Supreme Court sanction to the kind of police conduct at issue here, was the basis of this court's recent holding in *Cooper v. United States*, D.C.App., 368 A.2d 554 (1977). *Cooper*, which was decided after the suppression hearing here under examination, provides a good parallel with the instant case. There, appellant was observed by a police officer on the street in a high crime area one afternoon while carrying two portable television sets. He was asked how he had obtained the sets and, within a short time, gave two materially different explanations. Another officer arrived on the scene and recognized appellant as the man he had seen earlier making a suspicious exit from a nearby house. The officers decided to go to that house to investigate, and took appellant with them so that he would be available for arrest if their suspicions were confirmed. Meanwhile, they impounded the television sets. At the house, police found evidence of homicide and burglary, which appellant sought subsequently to suppress as fruit of an illegal arrest.

This court viewed the encounter as a reasonable stop, and denied suppression. We said at 556–57:

With respect to street detentions we might observe, preliminarily, that whatever it might have been in previous decades, with the advent of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the law relating to street encounters underwent a change and became more realistic. Prior to *Terry* the decisions in this phase of the law usually revolved around whether there was an arrest and, if so, whether there was probable cause supporting it. . . .

. . . In more cases than not, the real questions for the court now are whether the initial brief street detention by the police was based upon an "articulable suspicion" and, if so, whether the circumstances later had graduated into probable cause to arrest when the arrest occurred.

. . . . .

As the Supreme Court said in *Adams v. Williams, supra:*

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [407 U.S. at 145–46, 92 S.Ct. at 1923 (citations omitted).]

■ In the instant case, Officer Beach's suspicion had been reasonably aroused and his grabbing of the arm of one of the subjects was necessary in order to maintain the status quo. While the officer's action and the ensuing conversation constituted an investigatory stop,[1] we find that the officers

---

1. *See Robinson v. United States*, D.C.App., 355 A.2d 567, 568 (1976), in which this court viewed a police officer's chasing of a suspect and forcibly bringing him to a halt as a stop

had reasonable, articulable suspicion on which to base their action. We are impressed particularly that they were experienced officers, patrolling an area in which burglary and larceny were commonplace. The stop was less intrusive than the stop upheld in *Cooper*. The sight of two men carrying a television set through an alley late at night sufficed to arouse suspicion, particularly when the men did not take the set to a building backing onto the alley but instead continued walking through the alley from one end toward the other. The men appeared to be struggling under the weight of the set and no motor vehicle or delivery van was in sight. In light of all the facts it was appropriate for the officers to stop the subjects to "maintain the status quo momentarily while obtaining more information." *Adams v. Williams, supra* at 145–46, 92 S.Ct. at 1923.

## II. APPELLEES' ARREST WAS BASED ON PROBABLE CAUSE

■ Probable cause has been defined as the existence of facts and circumstances within the arresting officer's knowledge which suffice to warrant a person of reasonable caution in the belief that a crime has been committed by the person being

---

and not an arrest. *See also Stephenson v. United States*, D.C.App., 296 A.2d 606, 608–09 (1972); *White v. United States*, D.C.App., 222 A.2d 843 (1966).

2. *See In re E.F.B.*, D.C.App., 320 A.2d 95 (1974) (probable cause where police found juvenile carrying dismantled bicycle and pliers through an alley in a high crime area at 4 a.m. and where suspect gave implausible explanation for being so far from home at that hour); *Wray v. United States*, D.C.App., 315 A.2d 843 (1974)

---

arrested. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). *See also Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Arrington v. United States,* D.C.App., 311 A.2d 838 (1973); *Bailey v. United States*, 128 U.S.App.D.C. 354, 389 F.2d 305 (1967).

■ We find that appellees were not arrested until police formally informed them of that fact. At this time, the police officers' initial suspicions had been confirmed by receipt of conflicting and suspicious explanations from the suspects as to where the television set had been obtained and where it was being taken, culminating in appellee Childs' statement that he had declined to give the police his real name because the set was "hot stuff." The existence of probable cause on these facts is supported by precedents of this court.[2]

*Reversed and remanded for further proceedings.*

(probable cause based on suspect's highly improbable reply to police questioning); *Wright v. United States*, D.C.App., 242 A.2d 833 (1968) (probable cause based on suspect's inability to describe contents of suitcase of which he claimed ownership); *Lee v. United States*, D.C. App., 242 A.2d 212 (1968) (probable cause based on multiple suspects' inconsistent replies to police questioning about the origin of a heavy paper bag they were carrying from a motel in the early morning hours).