**UNITED STATES of America**

v.

**Cecil B. FOSTER, Appellant.**

**UNITED STATES of America**

v.

**Alvin J. STAFFORD, a/k/a "Butch", Appellant.**

**UNITED STATES of America**

v.

**James E. PRINCE, Appellant.**

**Nos. 77–1954, 77–1955 and 77–1992.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 28, 1978.

Decided June 30, 1978.

Rehearing Denied July 27, 1978.

Certiorari Denied Dec. 4, 1978.
See 99 S.Ct. 620.

Richard A. Wolff,* with whom Michael E. Geltner, New York City (appointed by this Court) and Larry J. Ritchie, Washington, D. C., were on the brief, for appellant, James E. Prince.

David E. Schreiber, Washington, D. C. (appointed by this Court), for appellant, Cecil B. Foster.

John C. Monahan, Rockville, Md., with whom Henry J. Monahan, Rockville, Md. (appointed by this Court) was on the brief, for appellant, Alvin J. Stafford.

Estelle D. Kumar, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, and James M. Hanny, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before DANAHER, Senior Circuit Judge, and TAMM and ROBB, Circuit Judges.

Opinion for the Court filed by DANAHER, Senior Circuit Judge.

DANAHER, Senior Circuit Judge:

Defendants Stafford, Foster, Prince and Hughes had been charged with the unlawful possession of dangerous and narcotic drugs in violation of 21 U.S.C. § 841(a) and 33 D.C.Code §§ 402 and 702. All defendants entered pleas of not guilty and filed motions to suppress certain evidence obtained as incidental to or growing out of their arrest. Following a hearing on June 1, 1977, all motions were denied pursuant to a written memorandum dated June 7, 1977.

Senior District Judge Sirica in that June 7th memorandum noted that the "tangible evidence in question" had been lawfully obtained in the course of investigative efforts by the arresting officer. Subsequent developments resulted in a dismissal of all charges against defendant Hughes. The remaining parties stipulated for a bench trial, the Government proffered certain evidence not already in the record, and the parties were directed to submit post-trial memoranda, and they did so. Thereafter a Memorandum of Decision was filed on July 29, 1977, with the district judge then setting forth his ultimate findings and conclusions of law. Judge Sirica noted that the Government's proof had not established beyond a reasonable doubt that Stafford had possessed phencyclidine "with a specific intent to distribute."[1] However, he concluded that beyond a reasonable doubt, defendants Prince, Stafford and Foster "are each guilty as charged of one count of unlawful possession of phencyclidine."[2] Motions for acquittal were denied.

This appeal followed.

Our inquiry accordingly will be directed to the events giving rise to the Government's acquisition of the "tangible evidence."

### I.

Pertinent background facts may here be supplied, compendiously to be distilled from the findings reported by the trial judge. About 1:30 p. m. on March 7, 1977, Officer McMaster, a six-year veteran of the Metropolitan Police Department, was on patrol in Southeast Washington. Over his radio he heard a police broadcast that a bank robbery had just taken place in nearby Maryland.

Two suspects had made their escape in a Volkswagen automobile. Based on his ex-

---

* Entered an appearance as Student Counsel pursuant to Rule 20 of the General Rules of this Court.

1. The trial judge recited in his Conclusions that phencyclidine is a "controlled substance within the meaning of 21 U.S.C. § 841(a) and a dangerous drug within 33 D.C.Code § 702."

   Section 841(a) proscribes as unlawful the possession of a controlled substance "with in-

tent to distribute . . .". 21 U.S.C. § 812, Schedule III(b)(7) identifies "phencyclidine".

   The Forensic Chemist Laboratory Director, in his laboratory reports also identifies phencyclidine in its "street" terms as PCP. Some of the samples, such as those taken from Foster, were found to have contained heroin.

2. 33 D.C.Code § 702. The Government dismissed the remaining counts against the three appellants.

perience, the officer undertook to station his cruiser at a location some two or three miles from the robbery scene and on a route most likely to be followed by the escaping robbers. Before he reached his intended lookout point, the officer saw a silver-painted Volkswagen already parked in the 2200 block of Southern Avenue, S.E. Later to be identified was the driver, one Hughes, and the other front seat passenger was the appellant Prince. The occupants of the rear seat turned out to be appellants Foster and Stafford.

Two men on the curbside were, as the judge put it, "huddled by the car talking to" the occupants of the Volkswagen.

Believing that he had located the getaway car, Officer McMaster drove on past the silver-painted Volkswagen, unnoticed by the cluster of individuals just referred to.

He had noted that there was a Maryland dealer's tag on the suspect car and that there was no registration plate on the front. Presently turning his cruiser around, the officer came up behind the Volkswagen and parked that he might approach on foot. He cautiously sought, tactically, to disguise his suspicion that he had come upon the getaway Volkswagen involved in the Maryland robbery and that before him were at least some of the robbers. He intended to ask Hughes to produce his driver's permit and the registration for the Volkswagen. He feared that if alarmed, the possible suspects might take flight or even resort to violent action.

As McMaster walked up, he saw appellant Stafford[3] pass a hand-rolled cigarette to driver Hughes.

The latter exhaled what the experienced officer identified as marijuana smoke, just as Hughes was being asked[4] to produce his driver's permit and the car's registration. Hughes at once threw the cigarette to the ground. Hughes explained that the car had been rented in Maryland and that he had no registration for it, but he did produce his own driver's permit.

The officer seized the opportunity, ostensibly to check[5] on the information so provided and so returned to the police car. He thereupon was able to radio to his superiors and to inform them of his suspicions and of his likely need of assistance. Two Metropolitan Police lieutenants promptly responded. They noticed that the Volkswagen before them was gray whereas the getaway car was of an entirely different color. They informed McMaster that he had the "wrong ones." He, in any event, announced his purpose to arrest the two suspects who had been smoking marijuana.

Accordingly, he ordered driver Hughes to get out of the car, saying "You are under arrest." As McMaster was patting him down he saw Prince in the front passenger's seat remove from under a newspaper on his lap, a folded paper grocery bag. Prince pushed that paper bag between the two front seats, and then passed it back "stealthily" to appellants Stafford and Foster in the rear seats. We quote verbatim from the findings of the trial judge with particular reference to what next developed.[6]

---

**3.** As Stafford tells us in his brief, the officer saw Stafford "take a drag on a hand-rolled cigarette and pass it to the driver, Mr. Hughes, who did the same."

**4.** One of the two men on the curbside, leaning into the car, then seeing the officer, turned and ran into a nearby apartment house.

As events so rapidly unfolded the second man on the curbside noticed the uniformed officer, backed away and disappeared.

**5.** Cf. *United States v. Weston*, 151 U.S.App. D.C. 264, 267–268, 466 F.2d 435 at 438–439 (1972), where we find an example of the value

of police tactics in verifying a driver's permit and the registration of a car on a public street.

**6.** The trial judge's findings next read:

14. McMaster further observed that defendant Stafford placed the bag on the seat and pushed it towards defendant Foster who pushed it back to Stafford, who again pushed it towards Foster, all of which indicated to Officer McMaster that neither Prince, nor Stafford, nor Foster wished to be deemed in possession of the bag's contents. These actions also indicated that these three individuals knew what was contained in the bag.

It became clear enough that Prince, Stafford and Foster sought to dissociate themselves from control of that bag and its contents.

But Officer McMaster believed the paper bag contained a weapon. He pushed Hughes out of the doorway of the car where he was being patted down and reached for the bag then held by Stafford. McMaster ordered the latter to get out of the car while, at the same time, holding Stafford's arm so that he could not reach into the bag.

The officer then feeling the bag which weighed at least a pound, noticed that its contents included a soft object and something which he believed to be "some type of weapon." Opening the bag, the officer found narcotics paraphernalia, cutting and packaging materials, individually-wrapped tinfoil and plastic packages containing some 35,570 milligrams of phencyclidine.[7]

The trial judge concluded[8] that these appellants "beyond a reasonable doubt" had been engaged in a common enterprise, each participating in and guilty of a constructive possession of a dangerous drug within the meaning of 33 D.C.Code § 702.

### II.

▉▉▉ All of us at one time or other, one might say again and again, have considered cases where we reviewed the denial of motions for judgment of acquittal. We have recognized that the judge in the trial court and we in this court must view the question in the light most favorable to the Government's position. Judge Burger (now Chief

Justice) so stated in *Crawford v. United States*, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967). He pointed out similarly that we must accord to the Government the benefits of all legitimate inferences as he drew upon *Thomas v. United States*, 93 U.S.App.D.C. 392, 393, 211 F.2d 45, 46, *cert. denied*, 347 U.S. 969, 74 S.Ct. 780, 98 L.Ed. 1110 (1954). The rule has been respected in numerous instances, such as *Curley v. United States*, 81 U.S.App.D.C. 389, 392, 394–395, 160 F.2d 229, 232, 234–235, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947), *United States v. Fench*, 152 U.S. App.D.C. 325, 333, 470 F.2d 1234, 1242, *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973), *United States v. Weston*, 151 U.S.App. D.C. 264, 266, 466 F.2d 435, 437 (1972) and *United States v. (Joseph) Davis*, 183 U.S.App.D.C. 162, 562 F.2d 681, as lately as April 6, 1977. In our careful consideration of the claims here advanced, once again we have applied the principle, and with the record so viewed, we find no error.

Judge McGowan in *United States v. Wylie*, 186 U.S.App.D.C. ——, 569 F.2d 62, 66 (1977), observed that the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), had recognized that

> "[s]treet encounters between citizens and police officers are incredibly rich in diversity," and consequently each case must be evaluated in light of the particular array of facts presented . . . .
>
> It is our view that the police conduct at issue here involved a proper progression of escalating responses to circumstances which generated a mounting degree of suspicion that a crime had occurred.

---

7. Officer McMaster thereupon arrested appellants Prince and Foster. From the latter the officer took a shoulder bag which was found to contain 4,860 milligrams of phencyclidine and 3,820 milligrams of heroin.

   The several defendants were then and there advised of their *Miranda* rights and were taken into custody.

   At the Narcotics Office where the defendants were again advised of their *Miranda* rights, Officer McMaster began typing up his formal police report. He then asked fellow detectives to estimate the street value of the seized contraband. One detective expressed an appraisal of some $1,400. Stafford thereupon volun-

teered that the street value was much less than the estimate given by the officer. The trial judge viewed Stafford's volunteered comment as highly probative but inconclusive to establish that Stafford personally had harbored an intent to distribute.

8. No narcotics sale was shown to have occurred although Prince possessed in the paper bag in his lap the phencyclidine "packaged in saleable form." The judge in his Conclusions further noted that the two men whom he described as "huddled by the car" were, he said, "thought to be potential purchasers."

The series of events here, as found by the trial judge, successively gave rise to the ultimate conclusion he reached. For example, a circumstance neutral of itself, upon becoming part of the gathering whole may, as here, take on important significance. In *United States v. (Patrick) Davis*, 147 U.S. App.D.C. 400, 403, 458 F.2d 819, 822 (1972), our opinion spelled out that the surreptitious passing of a package can become a possible element in establishing the probable cause mix. Again, the *Wylie* opinion, *supra*, at 68, emphasized "that in judging the reasonableness of the actions" of a police officer, "the circumstances before him are not to be dissected and viewed simply," but must be considered as a whole. "So considered they are to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training. *United States v. Hall*, 174 U.S.App.D.C. 13, 15, 525 F.2d 857, 859 (1976)." [9]

■ Reasonableness of the action taken by a police officer in a particular situation presents a criterion not to be overlooked as we undertake to strike and apply a proper balance. Judge McGowan in *United States v. Wylie, supra,* 186 U.S.App.D.C. at 239, 569 F.2d at 70, and Judge Leventhal in *United States v. Short*, 187 U.S.App.D.C. 142, 145, 570 F.2d 1051, 1054, note 6 (1978), have both pointed to guidance we deem helpful here. As the Supreme Court explained in *Adams v. Williams*, 407 U.S. 143,

145–146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (citations omitted):

In *Terry* this Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.*

■ Taking account of the facts as found by the trial judge and the inferences [10] reasonably to be drawn from those facts, we are in agreement with the conclusion reached by the trial judge that Officer McMaster as an experienced Metropolitan Police Officer had here acted prudently and reasonably. The arrest was lawful and the contraband was properly received in evidence.

At the risk of possibly redundant reference to Supreme Court rulings predating *United States v. Chadwick, infra,* we deem

---

**9.** *Compare United States v. Battle*, 166 U.S. App.D.C. 396, 398, 510 F.2d 776, 778 and cases cited (1975), and the facts as stated in *United States v. Weston*, 151 U.S.App.D.C. 264, 466 F.2d 435 (1972).

See generally *United States v. Staten*, 189 U.S.App.D.C. 100, 581 F.2d 878 (1978), where Judge Robinson has identified cases which in one respect or other have impact here. *See, Staten,* supra, at 105, 581 F.2d at 883. There we read:

The possession vital to the convictions under review may, in familiar language, be either actual or constructive.[43] It thus is unnecessary to show that the accused had the drug on his person or within his immediate reach;[44] it is enough that he "was knowingly in a position or had the right to exercise

dominion and control over" it,[45] either directly or through others.[46] Possession in that sense suffices though it is jointly shared,[47] and it may be established by circumstantial as well as direct evidence.[48]

(Footnotes omitted *but see* in detail, supra, at 105, 581 F.2d at 883).

* And compare *Williams v. Adams*, 436 F.2d 30 (CA 2 1970).

**10.** Our treatment thereof is in no way contrary to the discussion contributed by the distinguished late Jerome Frank in an Appendix to *Wabash Corp. v. Ross Electric Corp.,* 187 F.2d 577, 601, 602 (CA 2 1951).

it desirable to trace out the development of pertinent principles.

> . . . When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . .

*Chimel v. California*, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).

Perhaps no one of our illustrious legal mentors better has conferred guidance than the late Mr. Justice Black writing for a unanimous court in *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964):

> . . . The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control.

*Id.*, at 367, 84 S.Ct. at 883.

In view of the circumstances we have narrated based upon the findings of the district judge, we deem it entirely reasonable that Officer McMaster sought to exclude the possibility of assault when he was in the immediate presence of four possibly drug-stimulated suspects.

We have been urged to rule that error here must be found because of the Court's ruling in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Reliance upon *Chadwick* is misguided, to say the least, for there the accused were already securely in custody, no exigency

had been shown, and a seized and padlocked footlocker had been for more than an hour in the exclusive control of the federal agents.

Rather, we should read *Chadwick* as teaching once again what had already been said in *Chimel* and *Preston, supra:*

> . . . When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless "search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (Citations omitted).

> Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. . . . (Citations omitted).

*Id.*, at 14–15, 97 S.Ct. at 2485.

The law so stated must govern here.

Certain claims of a minor nature have been taken into account in the course of our review of the record in these consolidated appeals. Nothing short of frivolous, we might say, such claims have no substantive bearing upon the conclusions reached by the trial judge. We have adequately discussed in ample detail the factors which we deem controlling and which require that the judgments of conviction be and they are

*Affirmed.*