**Luther Lee NIXON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 13446.**

District of Columbia Court of Appeals.

Argued Jan. 25, 1979.

Decided June 5, 1979.

Constance T. O'Bryant, Public Defender Service, Washington, D. C., for appellant.

Norman M. Monhait, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, Peter E. George, and Cheryl M. Long, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, GALLAGHER, and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted after a jury trial of petit larceny. D.C.Code 1973, § 22–2202. He argues that the trial court erred in denying his motion to suppress a small box and its contents, which he was charged with stealing, on three grounds: (1) there was an inadequate basis for his original detention by police officers; (2) there was an inadequate basis for his arrest; and (3) the officers' opening of the box incident to the arrest was impermissible. We affirm.

## I

At approximately 9:00 o'clock one morning, Metropolitan Police Officers Trauger and Goulart were patrolling in an unmarked vehicle when they first observed appellant. He was looking intently into parked cars as he walked west on the 2800 block of Q Street, N.W. The officers did not know appellant, nor had they received a report of the commission of a crime, but their suspicions were aroused and they followed him in their car for some two and one-half blocks. During this three-to-five-minute period, appellant continued to peer into parked cars, and the officers noticed that he carried a folded newspaper under his arm. Officer Trauger knew that the neighborhood recently had experienced several larcenies (including ones from automobiles) and burglaries.

The officers lost sight of appellant as they drove past him and circled the block, but some four minutes later they spotted him running across Q Street (in the 3000 block) to hail a cab. At that time Officer Trauger saw protruding from the folded newspaper under appellant's arm a small brown box which appellant apparently had not been carrying when they observed him minutes before.

Their suspicions heightened, the officers pursued the cab as it drove east on Q Street away from Georgetown, and stopped it within a few blocks. Officer Goulart opened the front passenger door and asked appellant to step out and identify himself. Appellant got out and exhibited a valid driver's license. Goulart could see the box protruding from the folded newspaper on the front seat of the cab, and noted that it resembled a jewelry box. Appellant then was outside the cab, and Officer Trauger asked him about the box. When appellant responded that he had found it in the Adams Mill Road area that morning, Officer Trauger felt certain the explanation was a lie, because he had not seen the box in appellant's possession only minutes earlier. Without asking any further questions, Officer Trauger placed appellant under arrest.

In the meantime, Officer Goulart walked to the front seat and seized the box. Goulart testified that after the arrest he opened the box and found it to contain some jewelry, coins, and papers in the name of another person. The papers promptly led the police to the owner of the box at a nearby address on Q Street, who stated that it had been stolen.

The testimony of the lone defense witness at the suppression hearing—the taxi driver—added nothing significant, and the court substantially credited the officers' testimony. In denying appellant's motion to suppress, the court found that considering the totality of circumstances there was probable cause for the arrest, and that the seizure and opening of the box was a valid search incident to the arrest.

## II

We conclude initially that on the basis of articulable suspicions—indeed, if not more—the officers acted properly (1) in stopping appellant as he rode away from the scene, and (2) in ordering him out of the cab to investigate further. The officers did intrude upon appellant's liberty for Fourth Amendment purposes in so doing, but the particular intrusion clearly was warranted by "specific and articulable facts . . . taken together with rational inferences from those facts." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). *See also Jones v. United States*, D.C.App., 391 A.2d 1188 (1978).

The trial court found as facts that the two officers had been patrolling the area on plainclothes detail specifically in response to the recent high incidence of burglary and larceny in the area, and that "their training led them to feel that the actions of [appellant] in looking in the cars marked him as someone who was suspicious." This evolved to articulable suspicion that an offense had been committed when minutes later they spotted appellant hurrying to catch a cab to leave the locale, carrying the box which the officers previously had not seen. The Supreme Court in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972),

envisioned the type of circumstances presented by this case in stating:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be the most reasonable in light of the facts known to the officer at the time. [*Id.*, at 145–46, 92 S.Ct. at 1923.]

*See Dockery v. United States*, D.C.App., 385 A.2d 767 (1978); *Harris v. United States*, D.C.App., 382 A.2d 1016 (1978); *Cooper v. United States*, D.C.App., 368 A.2d 554 (1977); *Wray v. United States*, D.C.App., 315 A.2d 843 (1974); *Stephenson v. United States*, D.C.App., 296 A.2d 606 (1972); *Smith v. United States*, D.C.App., 295 A.2d 64 (1972); *Jenkins v. United States*, D.C.App., 284 A.2d 460 (1971).

We are not dissuaded from this conclusion by appellant's citation to cases holding that vague suspicion, perhaps justifying some questioning, does not automatically justify a *Terry*-type frisk for weapons or other full-blown detention. *See Whitten v. United States*, D.C.App., 396 A.2d 208 (1978); *Jones v. United States, supra; Coleman v. United States*, D.C.App., 337 A.2d 767 (1975); *Tyler v. United States*, D.C.App., 302 A.2d 748 (1973); *Gray v. United States*, D.C.App., 292 A.2d 153 (1972). Those decisions, properly reflecting the teaching of *Terry* and its companion, *Sibron v. New York*, 392 U.S. 40, 63–64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), are inapposite given the context and scope of this particular stop.

### III

There is little (if any) dispute as to the facts as developed at the suppression hearing, but we are mindful that on this appeal the facts and reasonable inferences therefrom are to be viewed in the light most favorable to the government. *See, e. g., Brooks v. United States*, D.C.App., 367 A.2d 1297, 1304 (1976). In this light we conclude that appellant's arrest was supported by probable cause.

■ Strong articulable suspicions supported the initial stop, as a consequence of which not a great deal more was necessary to justify appellant's arrest. Probable cause, of course, is a flexible concept concerned with reasonable probabilities as evaluated by a prudent and cautious police officer. *Crawford v. United States*, D.C.App., 369 A.2d 595, 600 (1977). Given (1) Officer Trauger's awareness of the high incidence of larceny and burglary in the area, and (2) his observations of appellant's suspicious activities before the stop, appellant's implausible reply as to where he had gotten the box gave the officer, guided by the whole of his experience, reasonable cause to believe appellant had committed a crime. *Ibid.; Harris v. United States, supra*, at 1018; *Patterson v. United States*, D.C.App., 301 A.2d 67, 69 (1973); *Jackson v. United States*, 112 U.S.App.D.C. 260, 262, 302 F.2d 194, 196 (1962). *See also United States v. Childs*, D.C.App., 379 A.2d 1188, 1191 (1977); *Wray v. United States, supra*, at 845.

■ We have recognized that in evaluating probable cause determinations, we are to be guided by reasonableness and are not to be entangled in attempts to microscopically align the facts of the case at bar with those of prior cases having inevitably differing factual circumstances.[1] *See Crawford v. United States, supra*, at 600; *Arrington v. United States*, D.C.App., 311 A.2d 838, 839–40 (1973). The finding of probable cause is solidly supported by prior decisions of this court concluding that there

---

1. The Supreme Court stated succinctly:

   Our fundamental inquiry in considering Fourth Amendment issues is whether or not a search or seizure is reasonable under all the circumstances. [*United States v. Chadwick*, 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977) (citation omitted).]

was probable cause when police officers were confronted with suspicious activity, followed by a patently implausible explanation for that activity. *United States v. Childs, supra; In re E. F. B.*, D.C.App., 320 A.2d 95 (1974); *Wray v. United States, supra; Wright v. United States*, D.C.App., 242 A.2d 833 (1968); *Lee v. United States*, D.C.App., 242 A.2d 212 (1968).[2]

While in some situations a more thorough questioning and/or investigation may be called for—*see, e. g., Harris v. United States, supra; Cooper v. United States, supra* —the scope of post-stop questioning is not dispositive as long as there is probable cause for arrest. *Crawford v. United States, supra*, at 600. Here, the officers' pre-arrest investigation was buttressed by the strong bases the officers had for the stop. We recognize that the presence or absence of a reported crime is a factor to be considered, which may be crucial in some contexts. However, we do not deem the absence of such a report to be of importance here, where the officers had good reason to believe they had just missed observing the actual commission of a crime. *Edwards v. United States*, D.C.App., 379 A.2d 976, 978 (1977); *Cooper v. United States, supra*, at 556 n.3; *Jenkins v. United States, supra*, at 463. *Compare Campbell v. United States*, D.C.App., 273 A.2d 252, 254–55 (1971).

Additionally, despite appellant's argument to the contrary, our sustaining the finding of probable cause here is not inconsistent with our prior holdings in *Daugherty v. United States*, D.C.App., 272 A.2d 675 (1971), and *Campbell v. United States, supra*. Basically, those cases stand for the proposition that it is not sufficiently suspicious for a person simply to be carrying a household item such as a television set on the street in a high crime area to give rise to probable cause for arrest—absent a meaningful additional basis for a police officer to believe a crime has been committed. We reaffirmed this general principle recently in *United States v. Pannell*, D.C. App., 383 A.2d 1078, 1080 (1978).

In *Daugherty, supra*, police officers were confronted with a person carrying a television set on the street in a burglary-prone neighborhood. They stopped him; he gave an explanation for his possession of the television set which was not inherently suspicious. The officers were not satisfied and seized the television set. They later found it to have been stolen, and arrested the suspect. We set aside the conviction, holding that since the facts and circumstances known to the officers at the time they seized the television set did not amount to probable cause to arrest, the seizure had been unconstitutional.

*Campbell v. United States, supra*, was a closer case. Police officers observed two men walking together on the street—one carrying a television set and the other holding a screwdriver. As the officers approached, one of the men dropped the screwdriver and then denied having done so. The same man then responded, to an officer's query, that they had just purchased the television set from his companion's cousin. The officers investigated, determined this explanation to be untrue, and arrested the two men. The court held that, although the facts known to the officers at the time of the arrests justified strong suspicion, they did not amount to probable

2. Appellant's reliance on *Smith v. United States, supra*, and *Jenkins v. United States, supra*, is misplaced, particularly when it is recognized that we affirmed denials of motions to suppress in both of those cases. In *Smith* and *Jenkins*, police officers' initial suspicions were aroused when they observed persons peering into parked car windows for an hour or more. To that extent we note the relevance of those cases, and we recognize that in the case at bar the officers observed this type of suspicious activity for about five minutes. However, beyond the identical nature of the initial suspicious activity, in neither *Smith* nor *Jenkins* did the facts unfold before the arresting officers as they did here—*i. e.*, a person peering into car windows in a high-larceny area; the person spotted moments later in flight from the area carrying an object he was not seen carrying before, partially concealed under a folded newspaper; and a patently implausible explanation as to where he got the box he was carrying. Therefore, the *Smith* and *Jenkins* courts' analyses of when and how articulable suspicions matured to probable cause in those cases are inapposite.

cause. Of significance to the court's holding was the fact that at the time of the stop—and at the time of arrest—the officers had no information on the commission of a crime involving the theft of a television set. *Id.,* at 255.[3] *Compare Clemm v. United States,* D.C.App., 260 A.2d 687 (1970).

Here, the officers' articulable suspicion that they had in fact just missed observing appellant's theft of the box certainly falls within the type of "factual circumstances" from which the majority in *Campbell* recognized that probable cause "can be readily implied." 273 A.2d at 254. Appellant's (and our dissenting colleague's) reliance on the quite distinguishable cases of *Daugherty v. United States, supra,* and *Campbell v. United States, supra,* thus is unpersuasive.

## IV

Given the arrest based upon probable cause, we find no merit in appellant's challenge to Officer Goulart's opening of the jewelry box at the scene of the arrest.

Appellant relies on *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), in support of his assertion that the warrantless search of the box was violative of the Fourth Amendment and thus provided grounds for suppression of the contents. This reliance is misplaced. Affirming the trial court's suppression of marijuana which had been found in a double-locked footlocker, the Supreme Court in *Chadwick* held that neither "search incident to arrest" nor any other recognized exception to the warrant requirement justified breaking open and searching the footlocker when it was in the exclusive control of the police at the station house, well after it properly had been seized at a train station and the defendant had been arrested (and confined in jail). The *Chadwick* Court, however, specifically endorsed the continued validity of the search incident to arrest exception as refined in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and its progeny. *United States v. Chadwick, supra,* 433 U.S. at 14–15, 97 S.Ct. 2476. *See also United States v. Foster,* 190 U.S.App.D.C. 16, 584 F.2d 997, 1002, *cert. denied,* 439 U.S. 1006, 99 S.Ct. 620, 58 L.Ed.2d 682 (1978).

■ We accordingly affirm the trial judge's determination that Officer Goulart conducted a valid search incident to arrest. Such searches properly are conducted after lawful arrests to prevent the possibility of an arrestee's reaching for a weapon or destructible evidence. The scope of such a search includes the person of the arrestee as well as "the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California, supra,* 395 U.S. at 763, 89 S.Ct. at 2040. *See United States v. Chadwick, supra,* 433 U.S. at 14–15, 97 S.Ct. 2476.

■ Here appellant was standing just outside the taxicab with Officer Trauger when Officer Goulart seized the box from the front seat of the cab and opened it.[4] Officer Trauger's immediate inspection of the box at the arrest scene was justified as being incident to the lawful arrest, and was fully consistent with the Supreme Court's

---

**3.** *See also Cooper v. United States, supra,* in which police officers observed a man carrying two television sets on the street, received from him two materially different stories as to how he obtained the sets, and recognized him as the person seen shortly before coming out of a nearby house. The officers took him with them back to the house to investigate further, found a murder victim in the house, and shortly thereafter arrested the man.

In *Cooper* the arrest occurred only after the discovery of the murder, so the court was not called upon to determine whether the officers had probable cause to arrest the man on the street on the basis of his possession of the television sets and his differing explanations in response to police questioning. We may assume arguendo that this question would be resolved in the negative, consistent with our holdings in *Daugherty v. United States, supra,* and *Campbell v. United States, supra.* In all three cases the police had no information as to related crimes' having been committed.

**4.** The propriety of the seizure itself is undisputed.

analysis in *Chadwick*.[5] *See also United States v. Finnegan*, 568 F.2d 637 (9th Cir. 1977); *United States v. French*, 545 F.2d 1021 (5th Cir. 1977); *United States v. Frick*, 490 F.2d 666 (5th Cir. 1973), *cert. denied*, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974).

Our holding is reinforced by our recognition of the minimal privacy interest involved in this search. Initially, we are not dealing with an item such as the *Chadwick* Court's double-locked footlocker, which was resting securely on police premises, or even with a latched suitcase or attaché case. More importantly, there was probable cause to believe that appellant had just stolen the box itself (as well, of course, as its contents). We question, then, whether the search (following arrest and the unchallenged seizure of the box) implicated any legitimate privacy interest on appellant's part in the box or its contents. This case thus is distinguishable from those in which, regardless of what the police have probable cause to believe is inside a container, the Warrant Clause is applied to protect the privacy interest which a person has in the contents of a sealed container apparently belonging to him. *United States v. Chadwick, supra*, 433 U.S. at 15–16 & n.10, 97 S.Ct. 2476; *United States v. Simmons*, 567 F.2d 314, 319 (7th Cir. 1977). Moreover, assuredly it was reasonable for the officer to open the box on the scene—given its status as likely stolen property and appellant's questionable privacy interest in it—in order to expedite investigation of an apparent theft. *Bailey v. United States*, D.C. App., 279 A.2d 508, 511 (1971). *See also Johnson v. United States*, D.C.App., 309 A.2d 497 (1973); *Patterson v. United States, supra*. Considering all of the circumstances, we find no impermissible intrusion on appellant's Fourth Amendment rights, and affirm the denial of the motion to suppress.

*Affirmed.*

KELLY, Associate Judge, dissenting:

In my judgment appellant's arrest in this case was without probable cause. *See Campbell v. United States*, D.C.App., 273 A.2d 252 (1971); *Daugherty v. United States*, D.C.App., 272 A.2d 675 (1971). I would reverse the conviction.

---

5. The *Chadwick* Court stated:

   Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. [433 U.S. at 14–15, 97 S.Ct. at 2485 (citations omitted).]