UNITED STATES, Appellant,

v.

Major A. PANNELL, Jr. and Robert W. Dean, Appellees.

No. 12135.

District of Columbia Court of Appeals.

Argued Nov. 8, 1977.

Decided March 9, 1978.

| Contested Debts | | Uncontested Corporate Debts | |
|---|---|---|---|
| Falaccimo note | $ 5,000 | Alcoholic Beverage | |
| Taro note | 5,000 | Suppliers | $ 3,992.85 |
| D.C. Vending | 1,300 | Washington Post | 1,500.00 |
| | $11,300 | Pepsi Cola | 1,800.00 |
| | | Rent | 1,375.00 |
| | | Al Gleason Electric | 462.78 |
| | | United Electric | 439.33 |
| | | Tile & Marble | 300.00 |
| | | Tax & Minimum Wage | 3,200.00 |
| | | | $13,069.96 |

Robert I. Richter, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and David W. Stanley, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant.

Robert F. Muse, Public Defender Service, for appellee Pannell.

Michael J. Walsh, appointed by this court, for appellee Dean.

Before NEWMAN, Chief Judge, and MACK and FERREN, Associate Judges.

MACK, Associate Judge:

Appellees were charged in a two count indictment with second-degree burglary (D.C.Code 1973, § 22–1801(b)) and grand larceny (D.C.Code 1973, § 22–2201). The trial court granted a pretrial motion to suppress evidence, and the United States appeals pursuant to D.C.Code 1973, § 23–104(a)(1).

At approximately six a. m. on December 20, 1976, Officer Jack Vincent discovered that a panel in the rear door of an Amvets Store near 14th Street and Brentwood Road, N.E. had been removed. The officer reported a burglary; he did not know if anything had been taken, however, because he was relieved thereafter by officers on the day shift. Around 11:20 that evening Officer Vincent and his partner were driving a marked police car on their way to the Amvets location to check the store for security when they observed the appellees walking on 14th Street at Brentwood carrying what appeared to be a television set.

The officers stopped appellees and found that Mr. Pannell was carrying the television set, and that Mr. Dean had a paper bag containing a radio-clock and desk lamp combination and a portable radio. Appellees stated that they had found the property at the rear of the Amvets Store either in or near a trash dumpster. Officer Vincent knew that there was no trash dumpster at that location. After asking several other questions the officers recorded appellees' names, took possession of the property, and told appellees how they could secure release of it if they could prove rightful ownership. At some point during the questioning, although it is not clear whether it was before or after the property had been seized, appellees told the officers that the property had been stolen earlier that day by a man named "Hucks" (a known burglar), and that Hucks had planned to come back later and pick it up. In any event, appellees were not arrested and went on their way. Subsequent investigation revealed that the seized property had been taken not from the Amvets Store, but in another burglary which occurred sometime after 9:00 that same evening. The trial court concluded that the government had failed to establish that the officers had probable cause to seize the property. We agree and affirm.

The government contends that the seizure of the property was valid because the officers had probable cause to believe that it had been stolen. This argument could

have validity only if the officers had probable cause to believe that appellees had committed the crimes of stealing or receiving stolen property—*i. e.*, if the officers had probable cause to arrest. The cases relied upon by the government involve seizures incident to arrest. *See, e. g., Cooper v. United States*, D.C.App., 368 A.2d 554 (1977); *In re E.F.B.*, D.C.App., 320 A.2d 95 (1974); *Wray v. United States*, D.C.App., 315 A.2d 843 (1974). But here, the officers admitted that they did not have probable cause to arrest. During the suppression hearing, defense counsel inquired of Officer Vincent, "Why didn't you arrest them for receiving stolen property?" The officer responded, "We were not sure that the property had come from any particular establishment at that time. . . . We didn't know that it had actually been stolen."

In rejecting the government's contention the trial court relied upon *Daugherty v. United States*, D.C.App., 272 A.2d 675 (1971), in which the defendant had been convicted of receiving stolen property. Reversing the conviction this court concluded that " . . . in our opinion, the fact that appellant was seen carrying a portable television down a street in a neighborhood where burglaries were regular occurrences, even when his explanation for possession of the set heightened suspicions already aroused, does not amount to probable cause to believe that a crime had been committed." *Id.* at 676 (footnote omitted).

■ Although the Supreme Court has upheld the power of police officers to effect a warrantless seizure of evidence in "plain view," it has also cautioned that the object must be of an incriminating nature. *Coolidge v. New Hampshire*, 403 U.S. 443, 464–473, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). *See also* William E. Ringel, Searches and Seizures, *Arrests and Confessions* § 161 (1972). A television set is far from being obvious contraband, and there is nothing intrinsically wrong with walking down the street carrying one. As this court stated in

*Campbell v. United States*, D.C.App., 273 A.2d 252, 255 (1971), "[o]ur often criticized society has not yet deteriorated to the point where we can say that a man who carries openly, on the street, a large household appliance is probably a thief."

■ The government seeks support from the statement made by appellees that the property they were carrying had been stolen by a Mr. Hucks. Appellees counter that the statement must have been made after the seizure of the property, for if they had proffered such an explanation before the seizure, the police would have concluded that they had probable cause to arrest appellees for receiving stolen property. In evaluating the evidence all inferences therefrom must be drawn in the light most favorable to the party prevailing below. *Matthews v. United States*, D.C.App., 335 A.2d 251 (1975); *Saunders v. United States*, D.C.App., 317 A.2d 867 (1974). Thus we must assume that appellees' explanation occurred after the seizure and note that an illegal seizure is not cured by a subsequent inculpatory statement. *See Nueslein v. District of Columbia*, 73 App.D.C. 85, 115 F.2d 690 (1940); *Haynes v. State*, 110 Tex. Cr.R. 646, 9 S.W.2d 1043 (1928).

■ The police officers here had no warrant to arrest; no violation of the law was committed in their presence, they made no arrest, and they admitted with commendable candor they did not have probable cause to do so. Appellees were unknown to them, and there was no testimony that they had any information linking appellees or anyone fitting appellees' description with criminal activity. Although Officer Vincent knew that a burglary had taken place in the area, it had occurred more than eighteen hours before and he was not aware of what, if anything, had been taken. The knowledge that a burglary has occurred in a particular area is hardly a basis for seizing property carried by citizens. Under these facts, we cannot say that the trial court erred in finding the seizure to be in violation of the Fourth Amendment.* To hold otherwise

* As to the question of whether the officer's action could be categorized as a civil seizure of

"found property" (an issue addressed by the parties in their supplemental memoranda),

would be to authorize seizures incident to a "Terry" stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This we cannot constitutionally do.

The court's ruling granting appellee's motion to suppress is accordingly

*Affirmed.*

there appears to be no statutory or case law directly on point. This jurisdiction's only reference to the seizure of property in the civil context is found in D.C.Code 1973, § 4–152, which provides that:

> All property, or money alleged or supposed to have been feloniously obtained, or which shall be lost or abandoned, and which shall be thereafter taken into the custody of any member of the police force, or the police or criminal court of the district, or which shall come into such custody, shall be, by such member, or by order of the court, given into the custody of the property clerk and kept by him.

In construing the provision, this court has upheld the action of a police officer in picking up a billfold lying in the front window of a store,

finding incriminating property therein, and seeking to identify the owner. *Roseborough v. United States*, D.C.Mun.App., 86 A.2d 920 (1952). We cannot draw an analogy, however, between allowing the seizure of an item lying unattended in a public place and allowing the seizure of property from the hands of a citizen. A police officer's right to seize property from a person must be considered in the context of constitutional principles governing seizures generally. Warrantless searches are *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established and well delineated exceptions. *See Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The seizure of "found property" has not been recognized as one of these exceptions.