**UNITED STATES, Appellant,**

v.

**Major A. PANNELL, Jr. and Robert W. Dean, Appellees.**

**No. 12135.**

District of Columbia Court of Appeals.

June 28, 1978.

---

Michael W. Farrell, Asst. U. S. Atty., Washington, D. C. with whom Earl J. Silbert, U. S. Atty., John A. Terry and Robert I. Richter, Asst. U. S. Attys., Washington, D. C., were on the petition for appellant.

Robert F. Muse, Public Defender Service, Washington, D. C., for appellee Major A. Pannell, Jr.

Michael J. Walsh, Washington, D. C., appointed by this Court, for appellee Robert W. Dean.

On Petition for Rehearing or Rehearing En Banc

Before *NEWMAN, Chief Judge and KELLY, KERN, GALLAGHER, NEBEKER, YEAGLEY, HARRIS, *MACK and *FERREN, Associate Judges.

PER CURIAM.

### ORDER

On consideration of appellant's petition for rehearing or in the alternative for rehearing en banc, and it appearing that a majority of the judges of this Court have voted to deny the petition, it is

ORDERED that the en banc petition is denied; and it is

FURTHER ORDERED by the merits division that the petition for rehearing is denied.

Associate Judges NEBEKER and HARRIS would grant the petition for rehearing en banc.

---

\* Denotes merits division.

NEBEKER, Associate Judge, with whom Associate Judge HARRIS concurs (Statement as to reasons for voting to grant the motion for rehearing en banc):

Because application of the exclusionary rule generally operates to exclude the most probative evidence of guilt, if not to make prosecution impossible, the courts should, in my view, exhaust all reasonable theories in support of admitting the evidence. I do not view the division's opinion (383 A.2d 1078) as adequately or correctly resolving the issues of probable cause and the applicability of D.C.Code 1973, § 4-152. Because the latter issue presents an important question of law respecting a police officer's duty (and thus a "finder's" duty in the context of this case) respecting found property, I believe en banc consideration is warranted. I also find the division's decision inconsistent with precedent more closely applicable to this case than *Daugherty v. United States*, D.C.App., 272 A.2d 675 (1971) and *Campbell v. United States*, D.C.App., 273 A.2d 252 (1971). See D.C.App.R. 40(c).

The division's opinion finds the stop of appellees to be valid. Surely it was valid. The two were seen at about midnight in an area where at least one burglary had occurred that day. One was carrying a television set, a "not too uncommon fruit" of theft. *Clemm v. United States*, D.C.App., 260 A.2d 687, 688 (1970). The other was carrying a clock radio and a portable radio in a paper bag. A proper inquiry revealed a story of highly questionable truth—the items supposedly had been found in or near a trash dumpster to the rear of the recent burglary site. One of the officers, however, knew a part of that story to be false. There was no dumpster at that location. What were the officers supposed to do under the constitution when confronted with these facts? They could have done nothing and let the appellees and the property disappear.[1] They could have examined the property for possible identifying markings, but in another context we have held that to

---

1. Of course they could have obtained names and addresses, but that would only guarantee the disappearance of the property.

**738**

be improper. *See United States v. Boswell*, D.C.App., 347 A.2d 270 (1975). They could have, as they did, seized the property, but the division has said that was unlawful. They could have arrested appellees and seized the property as incident to the arrest, but the division has said, erroneously in my view, that they lacked probable cause.

Viewed objectively [2] the facts gave rise to probable cause to believe that appellees were not the owners of the property and "did not profess to be acting" for the owners. *See United States v. Wallace*, D.C. App., 283 A.2d 32 (1971). In *Wallace* the police had information that "the typewriter was the property of a third party." *Id.* at 33. It bore a tag to that effect. Here the statement to the police that they had found the property, if accepted as true, is sufficient to place this case under the *Wallace* holding. Indeed there is lacking in this case the very critical factor found in *Daugherty v. United States, supra*, and *Campbell v. United States, supra*, the very cases relied on by the division. In those cases the suspects offered plausible reasons for lawful possession. Daugherty said a friend asked him to take the television set to a girlfriend and sell it to her. Campbell said he just purchased the television set. I thus find *Wallace, supra*, to be controlling authority for this case. For purposes of the Fourth Amendment, it was reasonable for the police to seize the property as it appeared appellees either stole it or received it as stolen. Such a conclusion need only be a reasonable one, and on these facts it blinks at reality to reject this thesis to the preference of appellees' story that they found such valuable property at midnight by a dumpster that was not there. I find quite irrelevant the fact that the police did not arrest appellees when they seized the property. The less intrusive course can hardly render illegal a seizure which could have been made incident to a valid arrest.

Even giving credence to appellees' version of how they came to possess the items, I suggest that it is more rational to justify the seizure under § 4–152 of the Code than to suppress such probative evidence on the strained reasoning used by the division. That provision states:

> All property, or money alleged or supposed to have been feloniously obtained, or which shall be lost or abandoned, and which shall be thereafter taken into the custody of any member of the police force, or the police or criminal courts of the district, or which shall come into such custody, shall be, by such member, or by order of the court, given into the custody of the property clerk and kept by him.

At common law the finder of lost property had the burden of making reasonable efforts to locate the true owner.[3] I am confident no one would suggest that on the question of whether to suppress these items the law assumes that appellees were about their common law duty. I would read § 4 ·152 *in pari materia* with the duty of a finder of lost property and conclude that appellees had a duty to surrender the "found" items to the police. So I pose the question: Why apply the exclusionary rule in this case when ample reasons exist for concluding that the police acted wholly reasonably?

---

**2.** I do not find the officers' conclusion that they lacked probable cause as controlling. *See Terry v. Ohio*, 392 U.S. 1 at 21, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Oates*, 560 F.2d 45, 48 n.8 (2d Cir. 1977); *Payne v. United States*, 111 U.S.App.D.C. 94, 294 F.2d 723 (1961).

**3.** *See Morton, Public Policy and the Finders Cases*, 1 Wyo.L.J. 101 (1947); Regisman, *Possession and the Law of Finders*, 52 Harv.L.Rev. 110 (1939); and Brown, R.A., The Law of Personal Property, § 15 (2d Ed. 1955).