390 So.2d 517 (1980)
STATE of Louisiana
v.
Bernard ABADIE and Frankie Schielder.
No. 67723.
Supreme Court of Louisiana.
November 10, 1980.
*518 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John H. Craft, Leon A. Cannizzaro, Asst. Dist. Attys., for plaintiff-relator.
Edward A. Kunz, New Orleans, for Bernard Abadie.
John P. Ferrara, New Orleans, for Frankie Schielder, defendants-respondents.
LEMMON, Justice.
We granted the district attorney's application for certiorari in order to review the trial court's suppression of evidence seized by police officers following their warrantless entry into an apartment.
Shortly after midnight on March 12, 1980, Donald James called the police after observing several men carrying a safe into a house in his neighborhood. When police officers arrived at the scene, James identified himself and described his observations.[1] As he was speaking with the police, the witness observed a man apparently hiding under the stairway of a house in the block and identified him as one of the men seen carrying the safe. The person hiding under the stairway then fled around the side of the house, and the officers followed in close pursuit as he ran into the side apartment, leaving the front door open (although the screen door closed behind him). The officers approached the apartment and saw (through the screen door) a safe on the floor, surrounded by three men who were attempting to pry it open, with various tools.[2] The officers immediately ordered the men to come out of the apartment. They complied, but when the officer heard other people running in the apartment, he entered the three-room apartment and located a man and a woman hiding in the bathroom behind the shower curtain. The officers seized the unopened safe containing $7500, a pillowcase containing 3060 pennies, and a .38 calibre pistol. The safe and pennies, it was subsequently learned, were stolen during a burglary earlier that same evening.
Unquestionably, the officers acted reasonably when they pursued the fleeing man to the threshold of the apartment. The report of suspicious activity, combined with the suspect's flight, certainly justified *519 further investigation.[3] Although it is not criminal conduct to carry a safe around in public during early morning hours or to run when pointed out to officers, these actions raised an inference of criminal activity. See State v. Phillips, 347 So.2d 206 (La. 1977).
The apparent attempt to hide and the flight by the original suspect perhaps did not alone justify an inference of criminal behavior.[4] But when combined with the report of the suspect's highly unusual activity with the safe, the suspect's behavior justified a limited detention for further investigation. As we said in State v. Cook, 332 So.2d 760 (La.1977):
"The right to make an investigatory stop must be based upon reasonable cause sufficient to suspect the detainee of past, present, or imminent criminal conduct. State v. Weathers, 320 So.2d 892 (La. 1975); State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). As these decisions note, the reasonable cause must be determined, under the facts of each case, by whether the officers had sufficient knowledge of particular circumstances sufficient to permit them to infringe upon the individual's right to be left alone free of governmental interference with his liberty." 332 So.2d at 762.
In this case there was nothing unreasonable about the officers' pursuit of the suspect which brought them face to face with the other men attempting forcibly to open the safe. This conduct did not constitute the active creation of a "street encounter" by an officer. See State v. Saia, 302 So.2d 869 (La.1974). Because the facts available to the pursuing officers gave them an articulable ground to suspect that criminal activity was afoot, they were entitled to effect a forcible stop and hence were entitled to attempt to prevent the suspect's flight. See State v. Cook, above.
Furthermore, when the officers confronted the men attempting to force the safe open, they had probable cause to believe that a crime had been committed. Probable cause, as we have so often repeated, is far less than proof required to convict and must be determined in light of the ordinary experience of reasonable men. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). When police officers are aware that men had hauled a safe under cover of darkness during early morning hours, had fled at the sight of uniformed officers, and had attempted to pry the safe open, they have probable cause to believe that criminal activity was afoot.
In State v. Phillips, above, police responded to an anonymous tip and found a safe with signs of attempted forcible entry. The tip and the officers' observations gave officers probable cause to arrest Phillips, although the officers did not discover until later the specific burglary in which the safe was stolen. Under that interestingly similar factual situation, we stated:
"While the officers need not be able to negate all possible lawful explanations of a situation before making an arrest, they must have within their knowledge information upon which to reasonably base a belief that the person to be arrested is criminally connected with the circumstances." 347 So.2d at 209.
Because the officers in this case, when standing outside the apartment where their pursuit of the suspect had led them, were immediately confronted with the need to arrest and detain the suspects observed inside the apartment, they acted reasonably in first ordering the occupants to come outside. And then when two of the suspects rejected the command and tried to escape, the officers were confronted with exigent circumstances justifying their warrantless entry into the apartment to arrest (seize) *520 those two suspects, as well as to secure the safe and its contents. The officers were clearly confronted with the sort of emergency which justified prompt warrantless action, based upon the officers' own correct assessment of probable cause.
The decision of the United States Supreme Court in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), does not affect the lawfulness of the officers' entry upon private premises to arrest in this case. It has long been recognized that police acting with probable cause may effect warrantless entries to search and arrest when confronted with a situation, such as here, in which prompt action is necessary to prevent the flight of alerted suspects and possible destruction or removal of evidence. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The Payton decision only barred warrantless arrests following non-consensual entry into the suspect's house under circumstances in which there was no justification for the officers' failure first to present their facts to a neutral magistrate and to obtain judicial approval prior to the invasion of the suspect's house. Here, there was plainly no time for that procedure, since suspects were scampering away and evidence was within the immediate view of the police. The entry to arrest and to secure the safe was clearly supported by probable cause and was reasonable under the circumstances, despite the absence of prior judicial approval.
Once inside, the officers were authorized to search for the hidden culprits and to examine immediately accessible areas to secure weapons (such as the .38 pistol) for the purpose of self-protection. In conducting this search, the officers discovered the pennies and the pistol and lawfully seized these items.[5]Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Warden v. Hayden, above.
Just as the unusual and suspicious circumstances were sufficient to support probable cause to arrest the defendant, they also support the reasonableness of the seizure of the safe and pennies. The fact that the officers did not learn until later of the specific burglary, from which the loot was stolen, does not defeat the finding of probable cause.
Hence, the trial court erred in sustaining the motion to suppress.
The judgment sustaining the motion to suppress is reversed, and the motion is denied. The matter is remanded for further proceedings.
JUDGMENT GRANTING MOTION TO SUPPRESS REVERSED; MOTION DENIED; REMANDED.
NOTES
[1] James offered to testify at the hearing on the motion to suppress, but his testimony was stipulated by both sides. His credibility and the reliability of his eyewitness report are not questioned by defense counsel. Therefore, this case does not involve the report of a faceless police informant, but rather that of a community-minded citizen who relayed firsthand observations of suspicious activity, identified himself, and expressed a willingness to testify. The officers thus had a substantial basis for crediting the report. See United States v. Bell, 457 F.2d 1231 (5th Cir. 1972); United States v. Burke, 517 F.2d 377 (2d Cir. 1975); United States v. Darensbourg, 520 F.2d 985 (5th Cir. 1975).
[2] The officers were able to observe the men and the safe from a vantage point where they had a right to be. Put otherwise, the safe and suspects, although inside the apartment, were in "plain view" through the open door when the police officers reasonably pursued the first suspect to the threshold. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
[3] Information conveyed by a third person to an officer may justify a stop. The stop does not have to be justified solely on the firsthand observations of the officers. State v. Jernigan, 377 So.2d 1222 (La.1979); State v. Bolden, 380 So.2d 40 (La.1980).
[4] Compare State v. Washington, 364 So.2d 958 (La.1978); State v. Truss, 317 So.2d 177 (La. 1975).
[5] The pillowcase containing the pennies was located on top of a dresser, only a few feet from the safe.