410 So.2d 1123 (1982)
STATE of Louisiana
v.
Ronnie BAILEY.
No. 81-K-2173.
Supreme Court of Louisiana.
March 2, 1982.
*1124 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Oliver Johnson, Louise S. Korns, Asst. Dist. Attys., for plaintiff-relator.
A. Miles Pratt, III, Metairie, for defendant-respondent.
WATSON, Justice.
The issue is whether the police acted reasonably in confiscating a battery charger from defendant, Ronnie Bailey. USCA-Const.Amends. 4 and 14; LSA-Const.Art. 1 § 5.
At approximately 1:15 A.M. on June 16, 1981, Officer Ronald Jenkins and his partner were in a patrol car at the intersection of Prytania and Terpsichore Streets in New Orleans. The streets were deserted at that hour. The officers' attention was attracted by a couple walking on Terpsichore Street. The man was pulling or rolling a "commercial-sized" battery charger of a type generally seen in a garage or service station. After the police car went around the block, the officers observed the couple proceeding at a faster pace with the man carrying the battery charger on his back. The officers interviewed the two people. The man said he was Arthur Williams, a resident of Algiers, but could furnish no identification. The woman also could not furnish identification and stated that she was a drug addict. Neither owned an automobile. The battery charger was said to have been borrowed from Ike's Garage on Carondelet Street at 1:00 P.M. the day before. Ike's Garage, only two blocks away, was closed. The responses made were described as babbling and incoherent. Since there was no reasonable explanation of why these two people without an automobile were carrying a borrowed battery charger through the streets at 1:00 A.M., the officers attempted a computer check to see if the battery charger was stolen. The computer was out-of-order. The officers then confiscated the battery charger and gave a receipt to the man identified as Arthur Williams. Williams was advised that the battery charger could be retrieved from the police evidence and property room. Subsequently, it developed that the battery charger was stolen and defendant, Ronnie Bailey, alias Arthur Williams, was charged with two counts of simple burglary. Defendant's motion to suppress the battery charger was sustained by the trial court and a writ was granted to consider the ruling. 405 So.2d 322 (La. 1981).[1]
There is some question whether the initial encounter between the couple and *1125 the officers constituted an investigatory stop. "A `stop' involves an element of force or duress, temporary restraint of a person's freedom to walk away." State v. Salazar, 389 So.2d 1295, at 1298 (La.1980). There is no indication of coercion; there was no search and no physical contact. Even if characterized as a "stop", it was permissible in view of the unusual conduct exhibited by the defendant and his companion. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
The officers naturally wondered why a machine usually found at a place of business was being transported down the street in the early morning hours. When the couple quickened their pace and changed the mode of transporting the battery charger, there was further ground for suspicion. Possible criminal activity was manifest from the time of night, the unusual activity and the suspects' reaction to police observation. United States v. Cortez, 449 U.S. 411 at 417, 101 S.Ct. 690 at 695, 66 L.Ed.2d 621 at 629 (1981); State v. Abadie, 390 So.2d 517 (La.1980). Compare Daugherty v. United States, 272 A.2d 675 (D.C.App.1971) where the seizure took place at 2:30 P.M. and the item itself, a television set, was commonplace.
After the investigatory stop, the officers received a confused and unbelievable explanation of the suspicious circumstances. The suspects could not relate their activity to any innocent purpose. The account of a loan from Ike's Garage could not be corroborated, and the purpose of such a loan was not explained. Although no report of a theft was available, absence of a reported crime at the time of an investigation does not determine the constitutionality of police conduct. State v. Abadie, supra. Jenkins v. United States, 284 A.2d 460 (D.C.App. 1971); Wray v. United States, 315 A.2d 843 (D.C.App.1974).
Defendant did not claim that he owned the battery charger, but alleged that it was "borrowed". Evidence that an item belongs to a third party is significant in determining whether an inference of theft is reasonable. United States v. Wallace, 283 A.2d 32 (D.C.App.1971).
"... [S]ome seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity." Michigan v. Summers, 452 U.S. 692 at 699, 101 S.Ct. 2587 at 2592, 69 L.Ed.2d 340 (1981). Thus a temporary "seizure" of a person may be made without the degree of probable cause which would justify an arrest. Terry, supra; Michigan v. Summers, supra. Such a seizure is justified when there is a reasonable belief of criminal activity. Similarly, a police officer with a reasonable belief that certain property has been stolen can temporarily detain that property until its ownership can be determined. Such a temporary seizure does not necessarily require probable cause.[2]
In a similar situation, it has been held that there was probable cause for an arrest and seizure. Brooks v. United States, 159 A.2d 876 (D.C.Mun.App.1960). In Brooks, an officer observed two men with prior larceny convictions carrying a record player through the streets. After inconsistent and contradictory answers to questions, the officer arrested both men and seized the record player. Suspicious activity followed by a patently implausible explanation can establish probable cause for arrest. Nixon v. United States, 402 A.2d 816 (D.C.App.1979).
The officers, in confiscating the battery charger, picked the lesser intrusion on defendant's right to be let alone. There were exigent circumstances. The property was being moved, and neither of the parties could furnish any identification. "[T]he scope of the particular intrusion, in light of all the exigencies of the case, [is] a central element in the analysis of reasonableness." *1126 Terry, supra, footnote 15, 392 U.S. at 18, 88 S.Ct. at 1878, 20 L.Ed.2d at 904.
The officers reasonably inferred that this property was stolen. It was properly confiscated. "The less intrusive course can hardly render illegal a seizure which could have been made incident to a valid arrest." Dissent in United States v. Pannell, 387 A.2d 736 at 738 (D.C.App.1978). The fact that the officers did not make an arrest does not give defendant ground to complain about seizure of the "borrowed" property. A suspect has no constitutional right to be arrested as soon as the police have probable cause to do so. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).[3]
For the foregoing reasons, the ruling of the trial judge is reversed and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
DIXON, C. J., concurs.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs with reasons.
CALOGERO, Justice, concurring.
I concur in the majority opinion because I believe that where, as here, there was probable cause to make a warrantless arrest coupled with sufficient exigent circumstances to justify a warrantless seizure of property, the seizure alone was not illegal because not simultaneous with an arrest.
The officers saw the defendant walking along at 1:00 a. m. pushing a battery charger. As they circled the block the defendant had picked up the battery charger on his back to quicken his pace. This provided more than reasonable cause for the officers to temporarily to detain the suspect and question his actions. La.C.Cr.P. art. 215.1. At that time, defendant gave unclear answers, with no reasonable explanation of his actions. He stated that the battery charger was "borrowed" from the service station, which was at that time closed preventing verification of the claim. Defendant stated that he lived across the river and had no explanation for why he was on this side of the river. Finally, defendant was in possession of a battery charger, but stated that he had no automobile and provided no explanation of why he had the battery charger. He also could not produce any identification.
Based on these circumstances, it appears that the officers had the requisite probable cause to make a legal arrest of this defendant and, of course, an accompanying seizure of the battery charger. The fact that the *1127 officers chose a less intrusive alternative, to seize the battery charger, giving the suspect a receipt, without making the arrest, where the arrest was also justified, does not make the seizure of the battery charger illegal. For these reasons, I concur.
NOTES
[1] The trial court noted: "... it's an injustice to sustain this motion to suppress...."
[2] Compare State v. Sinclair, 523 P.2d 1209, 11 Wash.App. 523 (1974) where dicta indicates that probable cause is necessary to support such a seizure.
[3] LSA-C.Cr.P. art. 215.1, Louisiana's "stop and frisk" law, provides as follows:

"A. A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and an explanation of his actions.
"B. When a law enforcement officer has stopped a person for questioning pursuant to this Article, and reasonably suspects that he is in danger of life or limb, he may search the outer clothing of such person for a dangerous weapon or for any other thing the possession of which may constitute a crime.
"C. If the law enforcement officer finds a dangerous weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person."
Section B, supra, provides that a policeman, in fear of life or limb, may search for dangerous weapons or anything else "the possession of which may constitute a crime". Under Section C, the fruit of such a search may be retained during questioning, but the officer must then either return the item or arrest the person. Section C of the statute relates back to Section B, which primarily concerns weapons. Indeed, unless an officer has reason to believe that a suspect is armed and dangerous, the search is unconstitutional. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); State v. Bolden, 380 So.2d 40 (La.1980). The only purpose justifying Sections B and C is the protection of fearful officers during the course of questioning. Sibron, supra. Absent probable cause for arrest, weapons and other instruments of crime must then be returned. Sections B and C of the statute were not intended to apply to fruits of crime which are not themselves dangerous. Moreover, there was no "search" here. Sections B and C, supra, are irrelevant.