LANIER, Judge.
The defendant, Edwin J. Walters, Jr., was charged by bill of information with possession of cocaine in violation of La.R.S. 40:967(C). Walters entered a plea of not guilty at arraignment. He subsequently filed a motion to suppress the cocaine seized during a search of his person, contending the search was unconstitutional because it was made without a warrant and without probable cause. He also sought suppression of all statements made by him to law enforcement officers involved in his arrest, contending the statements were made under the influence of fear, duress, intimidation, menaces, threats, promises and without him being advised of his constitutional rights. After a hearing, the district court judge denied the motion to suppress. Walters then withdrew his former plea of not guilty and entered a plea of guilty as charged, expressly reserving his right to appeal the district court judge’s ruling on the motion to suppress. State v. Crosby, 338 So.2d 584 (La.1976). He was sentenced to serve one year in the custody of the Louisiana Department of Corrections. This appeal followed.
FACTS
At approximately 11:00 p.m. on January 7, 1984, Sergeant John T. Amiss of the East Baton Rouge Parish Sheriff’s Office was on uniform patrol in the 9300 block of Tracy Drive in East Baton Rouge Parish. Amiss observed a Datsun automobile with its lights off parked in front of an unoccupied duplex. The vehicle was parked sideways approximately eight to ten feet from the street. Amiss observed a white male in *1054 the driver’s seat of the vehicle. Amiss knew this was a high crime area and thought possibly a burglary of the unoccupied apartments could be in progress. Amiss pulled in behind the vehicle and asked the driver to exit the vehicle. The driver complied. Amiss asked to see the defendant’s driver’s license and he produced it. Amiss asked Walters what he was doing in this place, and he replied he was looking for a party. Amiss asked Walters what street the party was located on, and Walters replied he did not know. Amiss told Walters “to stand in front of my car and don’t move” because he was going to call in a warrant check. Amiss radioed in the defendant’s date of birth and driver’s license number for the check. The defendant started to walk away from the front of the patrol unit toward his own vehicle. Amiss told him again to stand in front of the unit and not to move. The defendant started weaving, acting nervous and started for his vehicle again. Amiss again told him to stay in front of the patrol unit. The defendant began using loud language, and Amiss then observed his eyes were bloodshot and he appeared to be intoxicated. At this time, Amiss issued a call for assistance.
The call for assistance was received by Trooper Emile S. Bourgoyne of the Louisiana State Police, who was at the intersection of Greenwell Springs Road and Sullivan with Lieutenant Moore of the East Baton Rouge Parish Sheriff’s Office. Bourgoyne and Moore (who were in separate police units) left this area to assist Amiss. Moore arrived at the scene first. When Bourgoyne arrived, Walters was in the passenger’s seat of Moore’s patrol car, Moore was in the driver’s seat and Amiss was standing outside Moore’s patrol car on the driver’s side talking to Moore. Bour-goyne went to Moore’s vehicle and, from a card which he carried, advised Walters of his Miranda rights.[1] Walters told Bour-goyne he knew all of that.
Moore tried to get Walters to explain why his car was parked where it was and what he was doing there. Walters replied he was trying to find a party but had no explanation for why his headlights were off and his car was parked in front of an abandoned duplex. Moore asked the defendant if he drank or smoked anything. Walters admitted to Moore he had smoked “a few marijuana joints”. Walters asked to go to his vehicle to get the marijuana and bring it back.[2] Walters went to the driver’s side of his vehicle and was followed by Bourgoyne. Amiss and Moore went to the passenger’s side of the defendant’s vehicle. Walters reached under the front seat of his car. Bourgoyne could not see what he was reaching for and, fearing for his own safety, reached down and grabbed the defendant’s hand and put both of the defendant’s hands on the car. Bour-goyne told the defendant “[l]et me check you first and let me check under that seat where you’re reaching before you reach up underneath there.” The defendant then moved his left hand quickly to his left coat pocket. Bourgoyne beat him to the pocket and retrieved a matchbox containing white crystal powder in a cellophane bag. The defendant subsequently admitted this powder was cocaine. Bourgoyne patted Walters down and walked him back to the patrol car and released him to Moore. Bourgoyne returned to the defendant’s vehicle to search “for any weapons or anything like that.”
Amiss advised the defendant of his Miranda rights. Moore went to a nearby telephone and called a narcotics officer for instructions. Walters became very aggravated and started screaming and hollering. Amiss handcuffed the defendant with both hands in the front and placed him in Moore’s vehicle. Later, Walters unlocked the patrol car door and started to leave. *1055 Bourgoyne and Amiss tried to stop Walters, and a fight ensued which lasted four or five minutes. Although Bourgoyne had patted down the defendant after he found the cocaine, the defendant had a small two-edged knife in a case in the front of his pants which Bourgoyne did not find. During the course of the fight, Walters tried, but was unable, to reach the knife. Also during the fight, the defendant kicked Bourgoyne in the eye.
After the fight, Walters was brought to the Earl K. Long Hospital for treatment, but, because of his behavior, he was refused treatment. Walters was then brought to jail.
The defendant’s vehicle was impounded and stored at Dealer’s Wrecker Service. The vehicle was inventoried, and some cocaine in a plastic bag was found on the dashboard and some burnt marijuana cigarette butts were found in the ashtray.
THE INVESTIGATORY STOP
The defendant frames the issues herein as follows:
1. The overriding issue is whether the search of defendant’s person and the seizure of the cocaine by the police officers was a valid, legal search and seizure.
2. The sub-issues are:
a. Whether the investigatory stop was reasonable and valid.
b. Whether the subsequent search of defendant was legal and valid.
In particular, the defendant contends the initial investigatory stop was not based on reasonable suspicion and failed to comply with the guidelines set forth in State v. Flowers, 441 So.2d 707 (La.1983). He further contends that when he was placed in Moore’s patrol car, his initial investigatory detention was converted into an arrest and because there was no probable cause to arrest him at that time, the arrest was invalid. Since his initial stop and subsequent arrest were invalid, the evidence seized from his person was “the fruit of the poisonous tree” and inadmissible. He further contends the inculpatory statement he gave about the marijuana was only made “after prolonged questioning, a lengthy detention, and denial of permission” to leave. The statement was “involuntary and was a result of impermissible coercive tactics by the police officers.”
The basic law applicable to investigatory stops is set forth in State v. Snoddy, 389 So.2d 377, 379 (La.1980) as follows:
The fourth amendment to the federal constitution protects people against ‘unreasonable searches and seizures.’ Measured by this standard, La.Code Crim.P. art. 215.1, as well as our federal and state jurisprudence, recognizes the right of a law enforcement officer to temporarily detain and interrogate a person whom he reasonably suspects is committing, has committed or is about to commit a crime.... We have held that reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual’s right to be free from government interference_ The United States Supreme Court has recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.... As the Supreme Court stated in Brown [v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) ], ‘we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity,’ ... Once a lawful detention is made, a police officer is justified in frisking the suspect for weapons under circumstances when he reasonably suspects that he is in danger of life or limb. [Citations omitted].
In Flowers, 441 So.2d at 712 and 713, the Court had the following pertinent observations:
Stopping an automobile and detaining its occupants constitute a ‘seizure’ within the meaning of the Fourth Amendment, *1056 even though the purpose of the stop is limited and the resulting detention is quite brief_ Whenever a police officer accosts an individual and restrains his freedom to walk away, he has ‘seized’ that person, Terry v. Ohio, supra, 392 U.S. [1] at 16, 88 S.Ct. [1868] at 1877 [20 L.Ed.2d 889 (1968)], and the Fourth Amendment requires that the seizure be ‘reasonable.’

Thus, there are at least three inquiries involved in determining whether a seizure was a valid investigatory stop: (a) whether the intrusion was an arrest or a stop; (b) whether the stop was of a type which is reasonable in view of the public interest served and the degree of invasion entailed; and (c) whether the particular stop was warranted by a reasonable suspicion based on specific, articulable facts and rational inferences from those facts....
The distinction between an arrest and a stop is crucial in many cases, for an arrest can be made only on probable cause, while a stop is proper under the more relaxed ‘reasonable suspicion’ standards of Terry. It is possible only to sketch some of the main features that demarcate the two types of intrusions. In Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the high court found a stop for questioning indistinguishable from a traditional arrest because the suspect was not questioned briefly where he was, was transported to the police station, was never informed he was free to go and, in fact, would have been restrained had he tried to leave. Among the circumstances other courts have considered important to classifying the intrusion as either an arrest or a stop are: the officer’s intent in stopping the citizen; the impression conveyed to the citizen as to whether he was in custody or only briefly detained for questioning; the length of the stop; the questions, if any, asked; the extent of the search, if any, made; and the amount of force, if any, used to make the stop. [Citation omitted].
Sergeant Amiss had a reasonable suspicion based on objective facts to make an investigatory stop of the defendant and “demand of him his name, address, and an explanation of his actions.” La.C.Cr.P. art. 215.1(A). The defendant was observed parked in an unlighted vehicle in an unusual manner in front of an unoccupied duplex in a high crime area. Such facts reasonably lead to the suspicion that a burglary of the unoccupied duplex was being, or was about to be, committed. Sergeant Amiss was justified in requesting the defendant’s driver’s license and an explanation of his conduct. The defendant’s explanation of his conduct heightened Sergeant Amiss’ suspicions. The defendant contended he was looking for a party but did not know what street it was on. If the defendant was looking for a party, why was he parked in an unlighted car in front of an unoccupied duplex? Although Sergeant Amiss had no report of a crime in the area, absence of. such a report does not determine the constitutionality of his conduct. State v. Bailey, 410 So.2d 1123 (La.1982). Inherent in an officer’s right to stop a suspect and demand his name, address and an explanation of his actions is his right to detain the suspect temporarily to verify the information given or to obtain information independently of his cooperation. State v. Fauria, 393 So.2d 688 (La.1981). To verify the information given to him, Sergeant Amiss called in the defendant’s date of birth and driver’s license number and asked for a warrant check. The defendant was only asked to remain in front of the officer’s vehicle while this check was being made.
The defendant was not arrested until he was placed under arrest by Trooper Bour-goyne after the cocaine was found in his pocket. Although not determinative of the issue, Walters testified he did not consider himself under arrest even after Moore and Bourgoyne arrived and gave him Miranda warnings. Amiss testified Walters was not under arrest until the cocaine was found. Bourgoyne testified he arrested Walters after he found the cocaine and until that *1057 time he did not consider him under arrest. Although the defendant was not free to leave, he was only being temporarily detained by an investigatory stop until Bour-goyne arrested him. No weapon or physical force was used to restrain Walters until he was arrested. After Walters’ initial evasive and unconvincing responses, the officers’ subsequent questions were an effort to obtain a reasonable explanation for his actions. The defendant was not searched until he made the quick movement for his left coat pocket. At no time prior to the arrest was the defendant relocated from the scene of the investigatory stop. Officer Amiss’s intent in stopping Walters was to determine why he was parked without lights in an unusual manner at 11:00 at night in front of an unoccupied duplex building in a high crime area.
The defendant in oral argument contended the instant case is controlled by the cases of State v. Jackson, 457 So.2d 660 (La.1984); State v. Oliver, 457 So.2d 1269 (La.App. 1st Cir.1984); and State v. Fleming, 457 So.2d 1232 (La.App. 1st Cir.1984). A review of these three cases shows they are factually distinguishable from the instant case.
THE FRISK
Because Trooper Bourgoyne did not have a search warrant when he searched the defendant’s left coat pocket and seized the cocaine, the burden is on the State to prove the admissibility of the evidence seized. La.C.Cr.P. art. 703(D); State v. Keller, 403 So.2d 693 (La.1981). La.C.Cr.P. art. 215.1(B) provides as follows:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
In State v. Wade, 390 So.2d 1309, 1312-1313 (La.1980), appears the following:
In State v. Hunter, 375 So.2d 99 (La.1979), this Court pointed out that merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. The basis for that statement was the implicit realization that criminality and weaponry are neither synonymous nor mutually inclusive. However, because there often is an overlap between the two, in many situations the circumstances that justify the stop also warrant the frisk....
The purpose of allowing a limited weapons search is to prevent harm to police officers by allowing action prior to a crisis stage. Terry, supra. Police officers are not required to stand by and give a suspect the first move before taking action. ‘The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.’ Terry, 392 U.S. at 27, 88 S.Ct. at 1883. Equally important is the protection of the suspect, presumed innocent by law, from the harm that could result to him should he naively do an act interpretable as reaching for a weapon at a time when a police officer may reasonably suspect the presence of a weapon. Within this class of actions could be such innocent acts as reaching into the back pocket to produce a wallet or thrusting a hand into a jacket for a pack of cigarettes. [Citation omitted].
Considering all of the facts and circumstances of this case, Trooper Bour-goyne reasonably suspected the defendant may have been reaching for a weapon when he reached under the seat of his car and when he reached into his left coat pocket. (As a matter of fact, the defendant did have a small double-edged knife in a case inside the front of his pants.) This reasonable belief was lawful authority for Trooper Bourgoyne to frisk the defendant for weapons after these actions took place. Since the search of the defendant and the seizure of the cocaine were pursuant to the *1058 authority of La.C.Cr.P. art. 215.1(B), the cocaine is admissible in evidence.
In addition, when the defendant admitted to the police officers (after being advised of his Miranda rights) that he had marijuana in his vehicle, the reasonable suspicion which justified the defendant’s temporary detention ripened into probable cause to arrest him. State v. Landry, 454 So.2d 318 (La.App. 4th Cir.1984). Since the police officers at that point in time had authority to arrest him, they could have lawfully conducted a search of his person as an incident to that arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Ruffin, 448 So.2d 1274 (La.1984); State v. Singletary, 442 So.2d 707 (La.App. 1st Cir.1983); State v. Leagea, 442 So.2d 699 (La.App. 1st Cir.1983).
The defendant’s assignments of error are without merit.
DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.

. Walters does not argue in brief on this appeal that the Miranda warning was inadequate.

. Amiss testified that he asked Walters what he was being so suspicious about and Walters replied he had some marijuana in the ashtray of his car and stated let’s walk over there and "I'll show it to ya'll."