| STATE OF LOUISIANA | NO. 25-K-15 |
|---|---|
| VERSUS | FIFTH CIRCUIT |
| MICHAEL WALLACE | COURT OF APPEAL |
| | STATE OF LOUISIANA |

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Linda Wiseman
First Deputy, Clerk of Court

February 11, 2025

Linda Wiseman
First Deputy Clerk

IN RE MICHAEL WALLACE

APPLYING FOR SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE JUNE B. DARENSBURG, DIVISION "C", NUMBER 24-1693

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Scott U. Schlegel

**WRIT DENIED**

Relator, Michael Wallace, seeks review of the 24th Judicial District Court's November 7, 2024 ruling denying his Motions to Suppress Statement and Evidence. For the following reasons, we deny the writ.

On March 27, 2024, the Jefferson Parish District Attorney filed a bill of information, charging Relator with possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1, on or about December 29, 2023. "Omnibus Motions and Order for Pre-Trial Motions" were filed on April 23, 2024, which included a "Motion to Suppress the Confession" and "Motion to Suppress the Evidence." On November 7, 2024, the trial court denied the motions to suppress evidence and statement. Defense counsel objected to the trial court's rulings and filed a "Notice of Intent." The trial court granted defense counsel until December 6, 2024, to file his writ application and later granted a motion for extension. The instant writ application was timely filed on January 9, 2025.

*Suppression Hearing and Post-Hearing Memorandum*

In October 2024, Louisiana State Trooper David Webster testified at the hearing on Relator's motions to suppress evidence and statement. Trooper Webster explained that he pulled Relator over because he failed to use a turn signal. Trooper Webster's interaction with Relator was captured by his body-worn camera, and the court reviewed the footage at the hearing. Trooper Webster ran Relator's license plate, and "it was confirmed or hit as a stolen hit." Also, the vehicle did not match the vehicle description associated with the license plate number. Trooper Webster activated his lights and called for Relator to step out of his vehicle. Trooper Webster stands by his own vehicle door and announces "DRIVER." A few seconds pass, and he directs the driver to roll down his window. Relator turns off his car and steps out, walking toward Trooper Webster. Trooper Webster asks if someone was in the car with him, and Relator indicates that there is. Trooper Webster then handcuffs Relator, and he confirms that Relator does not have anything on him that could injure the trooper during the search.

Trooper Webster tells Relator that this does not mean that he is under arrest, but he needs to figure something out. He walks Relator to the back seat of the police vehicle. Trooper Webster states, "So the plate you have on that vehicle is a switch." Relator replies[1], "I didn't switch it." Trooper Webster asks Relator who the car belongs to, and he replies that it is his car. Trooper Webster asks, "Is that the plate that came with the car?" Relator replies, "Yeah it's supposed to be." Trooper Webster begins to pat him down and search his pockets. He handcuffed Relator and observed that his sweatshirt was inside out and he was wearing multiple pairs of pants. He surmised Relator may have been aware of "some kind

---

[1] The first part of Relator's response and other dialogue was partially obscured by ambient noise.

of video surveillance" and made an attempt to hide any kind of identifying marks on his clothing. He found no contraband on Relator's person.

Another trooper arrives, and Trooper Webster informs him that someone is in the passenger seat. The other trooper detained Relator's companion and secured him inside of vehicle. After searching Relator and pulling out his wallet and keys, Trooper Webster directs him to sit down and states, "It doesn't mean you're under arrest right now, the license plate is showing that it's stolen." Relator replies, "If it is, someone switched that sh*t." Trooper Webster states, "If it comes back as not[?] good and it's just bad info on my end then you'll be on your way."

Then, at the recording's five minute and thirty second mark, Trooper Webster reads Relator his *Miranda*[2] rights and asks him if he understands, then Relator replies affirmatively.

Trooper Webster returned to Relator's vehicle to retrieve the VIN on the "B Pillar" of the vehicle and to compare it to the "VIN plate" on the windshield. When he was checking for the VIN, he saw an "impact wrench" and what was later determined to be the "correct license plate" for the vehicle on the driver-side floorboard. A review of the body cam footage shows that the wrench and the additional plate were in plain view after the car door was opened. The trooper stated that upon discovering these items, it led him to believe that there may have been a reason as to why the plates were switched and that there may have been more criminal activity that was either being concealed, or that he missed. He believed there must have been a reason that Relator was trying to conceal his vehicle.

Trooper Webster testified that he and the other trooper conducted a search of the vehicle, and the other trooper found a firearm under the driver's seat. He

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

testified that he asked the other trooper to look under the driver's seat because he had observed Relator make movements in the vehicle before he exited as if she was trying to put something under the seat.

Defense counsel filed the "Memorandum in Support of Motion to Suppress Evidence" six days after the hearing. Relator's memorandum urged the same arguments as the instant writ application. Defense counsel argued that the turn-signal violation was not seen on the bodycam footage. The trooper stated that no contraband was found on Relator or the passenger after their removal and search. He argued that Relator was not provided his *Miranda* warning at the time of arrest and he was questioned immediately by the trooper. Defense counsel averred that the statements, as well as evidence seized as a result of the statements were subject to suppression, pursuant to *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Defense counsel also argued that pursuant to *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), warrantless searches of vehicles incident to arrest are only allowed if an arrestee is within reaching distance of the passenger compartment at the time of the search or if it is reasonable to believe that the vehicle contains evidence of the offense. Defense counsel argued that Relator was not free to leave when he was placed under arrest and was not within reaching distance of the vehicle. He also averred that he was under arrest for the turn signal violation, and there was nothing concerning that violation which warranted detention, handcuffing, questioning without *Miranda*, and a full search of his person or vehicle. He argued that no evidence of a turn signal violation was likely to be found in a warrantless search of the vehicle.

A minute entry from November 7, 2024, provides that the trial court denied Relator's motions to suppress evidence and statement.

***Law and Discussion***

"Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants." *State v. Lewis*, 12-902 (La. App. 5 Cir. 6/27/13), 121 So.3d 128, 135-36, *writ denied sub nom. State ex rel. Lewis v. State*, 13-1926 (La. 4/17/14), 138 So.3d 618 (citations removed).

Inherent in the right of police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention. There is no question that the use of handcuffs incrementally increases the degree of force that is used in detaining an individual. However, arrest-like features such as the use of drawn weapons and handcuffs may, but do not invariably, render the seizure a de facto arrest. *Id.*

> Therefore, when the State seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a *Terry* stop, the State must show some specific fact or circumstance that could have supported a reasonable belief that the use of restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm. Since police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps as are reasonably necessary to protect their safety and to maintain the status quo during the course of a *Terry* stop. "[A]n officer's handcuffing a suspect is a reasonable method of ensuring officer safety."

*Id.* at 136. (Citations removed).

The State has the burden of proving the admissibility of a purported confession or statement by the defendant. La. C.Cr.P. art. 703(D); *State v. Arias-Chavarria*, 10-116 (La. App. 5 Cir. 9/28/10), 49 So.3d 426, 433, *writ denied sub nom. State ex rel. Arias-Chavarria v. State*, 10-2432 (La. 2/25/11), 58 So.3d 460. Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove, beyond a reasonable doubt, that the defendant was first advised of his *Miranda* rights, that he voluntarily and

intelligently waived them, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. *Id.*

Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible in evidence without *Miranda* warnings even where a defendant is in custody. *State v. Estes*, 14-781 (La. App. 5 Cir. 2/25/15), 168 So.3d 847, 860, *writ denied sub nom. State ex rel. Estes v. State*, 15-654 (La. 2/5/16), 186 So.3d 1164 (citing *State v. George*, 371 So.2d 762 (La. 1979), *cert. denied*, 444 U.S. 953, 100 S.Ct. 430, 62 L.Ed.2d 325 (1979)). Police officers are not obliged to ignore spontaneous and unsolicited statements by someone in custody, as long as the statements do not result from police-initiated custodial interrogation or questioning "'reasonably likely to elicit an incriminating response.'" *State in Interest of S.L.*, 11-883 (La. App. 5 Cir. 4/24/12), 94 So.3d 822, 837 (citing *State v. Ross*, 95-1798 (La. 3/8/96), 669 So.2d 384, 386).

A determination of voluntariness is made on a case-by-case basis, depending on the totality of the facts and circumstances of each situation. *Arias-Chavarria, supra*. The admissibility of a confession or statement is a determination for the trial judge, and the judge's conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. *Id.* Testimony of the interviewing police officer alone may be sufficient proof that a defendant's statements were freely and voluntarily given. *Id.*

A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. *State v. Jaramillo*, 23-322 (La. App. 5 Cir. 2/28/24), 382 So.3d 1072, 1079, *writ denied*, 24-367 (La. 10/8/24), 394 So.3d 267.

Upon review of the application and the body worn camera footage, we find that the district court did not abuse its discretion in denying Relator's motions to suppress evidence or statements. Although the traffic violation was not captured on camera, Trooper Webster's uncontroverted testimony is that he stopped Relator because he failed to use a turn signal. When the trooper ran the license plate of the vehicle, the search returned a "stolen hit". At the time the trooper engaged Relator, in addition to the traffic violation, there was a reasonable suspicion that the car was stolen. The trooper detained Relator by handcuffing him and eventually placing him in his vehicle, which was reasonable under the circumstances to ensure the officer's safety. At that point, the trooper was the sole law enforcement officer on the scene.

Next, the only three questions the Trooper asked Relator before Mirandizing him were 1) if there was anything on his person that would "cut, stick, or stab" him while he conducted the pat down; 2) who did the car belong to, and 3) is that the plate that came with the car in response to a spontaneous comment made by Relator after the Trooper explained why he was detaining him.

"As such, *Miranda* warnings are not required when officers conduct preliminary, non-custodial, on-the-scene questioning to determine whether a crime has been committed, unless the accused is subjected to arrest or a significant restraint short of formal arrest." *State v. Manning*, 03-1982 (La. 10/19/04), 885 So.2d 1044, 1073, *cert. denied*, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005). "Thus an individual's responses to on-the-scene and non-custodial questioning, particularly when carried out in public, are admissible without *Miranda* warnings." *Id.* "Similarly, although a motorist stopped for a traffic violation or an individual detained in a *Terry*[3] stop based on reasonable suspicion

---

[3]*Terry v. Ohio*, 392 U.S. 1, 19-20; 88 S.Ct. 1868, 1879; 20 L.Ed.2d 889 (1968) ("And in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the

has had his freedom of movement curtailed in a significant way,[4] until an arrest actually occurs, these Fourth Amendment seizures do not constitute custody for *Miranda* purposes." *Id.* at 1074 (Footnote in original). Therefore, the district court did not err or abuse its discretion in declining to suppress Relator's responses to the trooper's initial questions. Further, the video reveals that the other statements Relator made prior to being advised of his *Miranda* rights were spontaneous and voluntary, not made under duress, and therefore admissible under *Estes*, *supra*.

Further, we do not find that the trial court abused its discretion by denying Relator's motion to suppress evidence based on the warrantless search of the vehicle at issue.

When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving that the search and seizure was justified pursuant to one of the exceptions to the warrant requirement. La. C.Cr.P. art. 703(D); *State v. Brown*, 17-420 (La. App. 5 Cir. 2/21/18), 239 So.3d 455, 461, *writ denied*, 18-480 (La. 1/18/19), 262 So.3d 281. In *Brown*, this Court explained the law on warrantless searches of vehicles pursuant to the "automobile" exception:

> In *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (*per curiam*), the United States Supreme Court held that if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits the police to search the vehicle. In Maryland v. Dyson, 527 U.S. 465, 466–67, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (*per curiam*), the Supreme Court explained that the "automobile" exception has no separate exigency requirement. This Court has also recognized that the "automobile" exception does not have an independent exigency requirement, and if probable cause exists for the search of the vehicle that is sufficient. The exigency is supplied by the inherent mobility of the vehicle and the citizen's lesser expectation of privacy. *State v.*

---

first place.")

[4] While an arrest requires probable cause, an investigatory stop requires only the lesser standard of reasonable suspicion enunciated in *Terry v. Ohio, supra*; La. C.Cr.P. art. 215.1. An investigatory stop, like an arrest, is a complete restriction of movement, but for a shorter period of time. *See State v. Bailey,* 410 So.2d 1123, 1125 (La. 1982). In making a brief investigatory stop the police still "'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *State v. Kalie,* 96-2650 (La. 9/19/97), 699 So.2d 879, 881 (*quoting United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

*Mitchell*, 10-334 (La. App. 5 Cir. 10/26/10), 52 So.3d 155, 160 (citing [*State v. Joseph*, 02-717 (La. App. 5 Cir. 6/27/03), 850 So.2d 1049, 1054, *writ denied*, 04-2404 (La. 6/17/05), 904 So.2d 686].

In addition, the Louisiana Supreme Court has recognized that there is no constitutional distinction between seizing and holding a car before presenting the probable cause issue to a magistrate and immediately searching the vehicle without a warrant. *Mitchell*, *supra*; *Joseph*, *supra*. Given probable cause to search, either course is reasonable under the Fourth Amendment and the Louisiana Constitution. *State v. Tatum*, 466 So.2d 29, 31 (La. 1985).

At the hearing on the motions to suppress, Trooper Webster testified as follows: The turn signal violation was the initial reason he pulled Relator over. When he ran the license plate, the description of the vehicle did not match, and the plate produced a "stolen hit." Trooper Webster saw Relator making movements through the window as if he was attempting to conceal something. After detaining Relator and the passenger, Trooper Webster returned to the vehicle to verify the VIN on the B pillar and discovered a license plate and impact wrench on the driver-side floorboard. The discovery of the items used to switch plates and the suspicious nature of Relator's clothing led him to believe there may have been more evidence of criminal activity that was being concealed, or that he missed. For those reasons, he and the other trooper searched the vehicle, which resulted in the discovery of the firearm. Under these circumstances, we find the officers had probable cause to search the vehicle without a warrant under the automobile exception.

Accordingly, the writ application is denied.

Gretna, Louisiana, this 11th day of February, 2025.

**MEJ**
**SMC**
**SUS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN
TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS
DAY **02/11/2025** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF
THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY
COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**25-K-15**

### E-NOTIFIED

24th Judicial District Court (Clerk)
Honorable June B. Darensburg (DISTRICT JUDGE)
Thomas J. Butler (Respondent)                    Kevin V. Boshea (Relator)

### MAILED

Honorable Paul D. Connick, Jr.
(Respondent)
District Attorney
Twenty-Fourth Judicial District
200 Derbigny Street
Gretna, LA 70053